# MAY BROS. *v.* DOGGETT.

(Division A.   Nov. 18, 1929.   Suggestion of Error Overruled Feb. 10, 1930.)

[124 So. 476.   No. 27949.]

Shands, Elmore & Causey, of Cleveland, for appellant.

Roberson & Cook, of Clarksdale, for appellees.

Argued orally by **A. W. Shands**, for appellant, and by **Sam C. Cook**, for appellee.

**Cook, J.,** delivered the opinion of the court.

The appellee, J. L. Doggett, filed an original bill in the chancery court of the Second judicial district of Bolivar county against May Bros., a copartnership composed of Frank May, Ralph May, and T. E. Sledge, residents of Memphis, Tennessee, seeking to recover a large sum of money on account of numerous wrongs and items of damage enumerated in the bill of complaint, and praying for the issuance of a writ of attachment, to be levied upon certain real estate in Bolivar county owned by appellants. The appellants filed an answer, denying all the allegations of the bill of complaint, and further set up, by way of defense, an alleged settlement in full between the appellants and the appellee prior to the institution of the suit, except as to an item of ninety-nine dollars and fifty-two cents, which was tendered with the answer. The chancellor found against the appellants for an item of eighty-seven dollars and fifty cents, the cost of building a bridge, and also for the sum of seven thousand nine hundred seventy-four dollars and five cents, being the difference between the total amount claimed by the appellee to be due for cutting and hauling timber and the amount paid by the appellants, but as to all other items sued for a decree in favor of the appellants was entered; and from the decree awarding recovery for the two items mentioned an appeal was prosecuted to this court.

The facts necessary for an understanding of the issues involved are substantially as follows: The appellants were the operators of an extensive sawmill located in Memphis, Tennessee, and were the owners of a large tract of timber located in Leflore and Grenada counties, near a point known as "Madden Switch." The appellee was engaged in the business of cutting and hauling timber, and some time in the summer of 1924 he entered

into a contract with the appellants to cut and haul the timber from their said lands at and for the price of five dollars per one thousand feet. The appellee began operations under the contract, and continued until some time in November, 1925, when he learned that the appellants proposed to take over, for skidder operations, a strip of timber six hundred fifty feet wide on each side of their logging railroad, and about three and one-half miles long. The appellee testified that on or about November 28, 1925, the appellants advised him that they were about to contract this skidder haul away from him; that, when he learned that fact, he made complaint to appellants' logging superintendent, and informed him that he would refuse to continue to operate under the contract between them, unless they raised the price from five dollars to six dollars and fifty cents per one thousand feet on all timber remaining to be cut and hauled, being several million feet; that the skidder strip, being six hundred fifty feet wide on each side of the logging railroad constructed over, across, and through said timber lands, was, on account of its proximity to the railroad, less expensive to haul, and for this reason he was unwilling to relinquish his right to haul this timber, unless his compensation for cutting and hauling the remainder of the timber was increased to six dollars and fifty cents per one thousand feet; that appellants' logging superintendent agreed to this increase in price, provided he secured the approval of Mr. Frank May; that he at once called Mr. May over long-distance telephone, and he agreed to the increase in price for cutting and hauling the balance of the timber not included in the skidder strip; that he then continued to cut and haul the timber, and received pay therefor at the price of six dollars and fifty cents per one thousand feet until June, 1926; that when the scale for June, 1926, was sent in, his compensation was cut back to five dollars in accordance with the terms of the original contract; that, when this was done,

he made protest to the logging superintendent and demanded that he be paid six dollars and fifty cents per one thousand feet; that he went to Memphis to see Frank May, and that May assured him that he would have his logging superintendent pay him everything that was coming to him.

He further testified that appellants' logging superintendent contended that the increased price was promised for the winter months only, and informed him that the said increase was no longer in effect; that, when he received a statement and settlement for the next month's haul, he discovered that appellants were still paying him only five dollars per one thousand feet; that he then consulted an attorney, who advised him to complete the contract and say nothing more to the appellants about the price until he had done so; that he continued to receive monthly statements and settlements at the price of five dollars per one thousand feet for a number of months, but he made no further complaint, protest, or demand for the increased compensation; and that when the price was increased during the following winter and spring to six dollars, and then to six dollars and fifty cents, per one thousand feet, he assumed that the appellants made the increase in compliance with their agreement of November, 1925.

Frank May, one of the appellants, testified that in November, 1925, on account of excessive rains and bad weather, and the consequent bad condition of the woods and swamps, it became apparent that the appellee could not cut and haul the timber for five dollars per one thousand feet without losing money, and that, upon complaint being thus made to him, he authorized his logging superintendent to increase the price to six dollars and fifty cents through the winter months and until April, 1926; that this increase of price was a temporary affair, brought about by the weather and their great need of logs, and was wholly independent of the skidder trans-

action; and that on account of continued bad weather this increased price was voluntarily maintained until June, 1926, when payments were resumed at the original contract price of five dollars per one thousand feet.

The proof further shows that the appellee borrowed money from the appellants, for which notes were executed, and that advances were made to the appellee for feed and other necessities from time to time, and that on Tuesday, June 28, 1927, the appellee addressed a letter to the appellants, containing, among other things, a request in the following language: "When you receive Thursday's scale, please mail me statement covering account up to date." On July 2, 1927, in response to this letter, the appellants mailed to the appellee a statement of his account, and inclosed a check for eight hundred seventy-five dollars and fifteen cents, which contained on its face the recital, "In full of hauling account to date; this does not include note account." This check was received and indorsed by the appellee, and deposited to his account in his bank, and was paid upon its presentation to the bank upon which it was drawn. There was a small item of eleven dollars and forty-nine cents, which did not appear on appellants' ledger when this check was drawn, and was consequently overlooked; but this was included in succeeding statements and was paid. The appellee continued to cut and haul timber, and on September 13, 1927, the appellants mailed to him, and he accepted, a check for one thousand five hundred fourteen dollars and sixty-two cents, on the face of which there was a recital, "in full of account for logs—J. L. Doggett represents the logs to be free of all incumbrances, including cutting and hauling." The appellee indorsed this check, and it was paid to him. Thereafter there were some items of debit and credit, and on September 23, 1927, the appellants tendered to appellee a check for ninety-nine dollars and fifty-two cents to cover the balance due on these transactions, occurring between Sep-

tember 13 and September 23, 1927. This check was refused by appellee, and the appellants have tendered this sum with their answer in this cause.

Upon the controverted fact as to whether the increase of one dollar and fifty cents per one thousand feet in the price to be paid for cutting and hauling timber applied to all the timber outside of the skidder strip, or was to be effective only through the bad weather of the winters of 1925 and 1926, the chancellor found in favor of the appellee, and awarded him a recovery of one dollar and fifty cents per one thousand feet for all timber hauled after June, 1926, for which he had been paid only five dollars per one thousand feet; and we are unable to say that this finding of fact by the chancellor is not supported by the evidence, or that it is manifestly wrong.

The appellants contend, however, that, regardless of the finding of fact upon the controverted evidence as to the terms of the agreement entered into between the parties in 1925, the decree in favor of the appellee is erroneous, for the reason that there had been a complete accord and satisfaction of appellee's unliquidated claim for increased compensation; and in support of this contention they rely upon the case of Greener & Sons v. Cain & Sons, 137 Miss. 33, 101 So. 859, in which it was held that the retention, indorsement, and appropriation of the proceeds of a check for a less amount than the amount owing, upon which there was indorsed the words, ''In full of account to date,'' operated as a full discharge of the debt.

It seems to be the general rule, as announced by the text-writers (1 C. J. 554; 1 R. C. L. 191), that where a claim is unliquidated, or in dispute, the acceptance of a sum tendered by a debtor on condition that it be accepted in full settlement of the claim constitutes an accord and satisfaction; but in this state this rule applies to liquidated as well as unliquidated demands. Clayton v. Clark, 74 Miss. 494, 21 So. 565, 22 So. 189, 37 L. R. A.

771, 60 Am. St. Rep. 521; Greener & Sons v. Cain & Sons, supra. In the case at bar, the demand was unliquidated, and there was a bona-fide doubt or controversy as to whether anything was due. In June, 1926, the appellee received notice that the appellants contended that the time for which they were obligated to pay a price above that fixed in the original contract had expired, and that thereafter they would pay him according to the terms of the original contract. When this July settlement, which was on the basis of five dollars per one thousand feet, was received, he was thereby forcibly notified of the appellants' contention in this regard, and that they were refusing to pay in excess of the price named in the original contract. He accepted this settlement, and continued for a long period of time thereafter to accept monthly settlements calculated upon the basis of five dollars per one thousand feet, without making any further protest or claim for additional compensation; and, according to his own testimony, he never thereafter mentioned the subject to appellants until after the completion of the contract in September, 1927. On June 28, 1927, he wrote the appellants and requested them to mail him a statement covering his account to date; and in response to this request, the appellants prepared a complete statement of the dealings between them, except his promissory note account, and mailed him a check for the balance shown to be due by this statement, on the face of which was indorsed the words, "In full of hauling account to date; this does not include note account." The appellee received this check, and indorsed it, and appropriated the proceeds thereof, still without protest or notice to the appellants that any claim for a further sum would be asserted. On September 13, 1927, the appellants again tendered the appellee a check bearing on the face thereof the recital, "In full of account for logs— J. L. Doggett represents the logs to be free from all

incumbrances, including cutting and hauling.'' This check was likewise received and indorsed by the appellee, and the proceeds thereof were appropriated by him.

Although the testimony of the appellants is to the effect that the check dated July 2, 1927, and the check dated September 13, 1927, were intended as a full and complete settlement of all prior dealings between the parties in reference to the logs cut and hauled by the appellee, it is urged that the appellants could not have intended the check to cover the demand of the appellee for the increased price for the period after June, 1926, for the reason that Frank May, one of the appellants, testified that when they made up the statement of the account, as requested by appellee, and mailed him the check dated July 2, 1927, he did not know that the appellee was then making any claim for such additional compensation. We do not think this argument is well founded. The appellee had been notified in June, 1926, that the appellants contended that they were not obligated by their contract or any subsequent agreement to longer pay more than five dollars per one thousand feet. For the entire period for which a recovery of one dollar and fifty cents per one thousand feet was awarded, the appellee, without protest, received and accepted pay at five dollars per one thousand feet. A year later, by his letter of June 28, 1927, the appellee requested a full statement of his account, and in response thereto the appellants furnished him with what purported to be a full and complete statement of his logging account, showing a balance of eight hundred seventy-five dollars and fifteen cents due him thereon, and tendered him a check for that amount, on the face of which there was indorsed the words, ''In full of hauling account to date.'' When the appellee received this statement and check, he knew that the disputed amount was not shown thereon or included in the check, and that the appellants were con-

tending that the amount of this check covered all the balance due him on that date by reason of his logging operations. Under these circumstances, it was not permissible for the appellee to accept the check so tendered in full settlement, with the mental reservation that he would afterwards assert a claim for additional compensation; and, having done so, we think that under the doctrine of Greener & Sons v. Cain & Sons he is precluded from recovering for transactions antedating this settlement. The decree of the court below will therefore be reversed, and a decree will be entered here for the appellee for the sum of ninety-nine dollars and fifty-two cents tendered by the appellants.

Reversed, and decree here for the appellee.