LIFE & CASUALTY INS. CO. OF TENNESSEE V. KELLY

(Division A. Oct. 6, 1947.)

[32 So. (2d) 120.   No. 36505.]

**C. R. Bolton**, of Tupelo, for appellant.

**S. P. Clayton** and **Guy Mitchell, Sr. & Jr.**, all of Tupelo, for appellee.

Argued orally by **C. R. Bolton**, for appellant.

**McGehee, J.**, delivered the opinion of the court.

On April 15, 1940, Ezekiel Candler Kelly applied for and obtained a policy of insurance in favor of Vera G. Kelly, his wife, as beneficiary, with the appellant Life and Casualty Insurance Company, on what is known as a non-medical application. He died of an abscess on the brain on March 25, 1942, within the two year contestable period.

In his application, which together with the payment of the premiums thereon constituted the consideration and the basis for the issuance of the policy, the applicant was asked, among other things, the two following questions: First, ''Have you ever been told that you had heart trouble,'' and second, ''Have you ever had any of the following complaints or diseases: . . . disease of the heart . . . If yes, give particulars, dates and duration.'' Both of these questions were answered in the negative.

The medical testimony offered at the trial disclosed without dispute that the applicant was born as what is called a ''blue baby,'' and that, therefore, he had some impairment of the heart due to the fact that he was generally below par in physical strength and stamina, and did not breathe normally, to such an extent that as a young man he could not take the required strenuous exercise along with other average boys in playing such games as college football or baseball, but only ''backlot football and baseball,'' and that hence he knew that on account of such debility he should not engage in all of the physical activities that were undertaken by other boys.

Dr. Ernest Kelly of Memphis, an older brother of the insured, who stated that a good part of the life of the insured ''was after I left Lee County, Mississippi,'' testified that he had a congenital heart, but managed to do things other people did, graduated from high school, attended the University of Mississippi and a teachers college, where he was ''working his way through'' and that he ''wasn't too much handicapped after he grew up,'' even though the witness admitted that the abnormality referred to was due ''to a lack of circulation through the lungs'' and that ''we think he had some stenosis of the pulmonary artery,'' and when asked whether the insured ''knew he did have some trouble of the heart,'' answered that ''I am sure he did.'' That being born as ''a blue baby'' ''is an abnormality, it is not a disease.'' And he was also asked, ''What is the custom, if it is going to be fatal, about when is it fatal? A. They rarely live until

six. If they are going to live—if they overcome it and live beyond fifteen they can live a normal life. If the lesion is too bad they die before they are fifteen. Q. If they live to be thirty years old, what is the normal expectancy? A. The normal expectancy is good.''

The insured lived to be approximately thirty-four years of age, had a wife and child whom he supported from his earnings as an employee of the State Highway Commission in the engineering department, serving as a rodman, and had not lost but two weeks from his work within five years prior to his death, and this loss of time was due to a spell of influenza.

The appellee testified as to the condition and health of the insured at the time of the application was made for the policy of insurance and stated that ''I would consider it is was good, he did anything anybody else did.''

The policy itself contained the following pertinent provision: ''This policy and the application therefor shall constitute the entire contract, and all statements made by the insured shall, in the absence of fraud, be deemed representations and not warranties . . .''

There is no testimony in the record to the effect that any one had actually told the applicant for the insurance that he had any heart trouble. His brother, Dr. Ernest Kelly, merely stated, as hereinbefore shown, when asked whether the insured ''knew he did have some trouble of the heart,'' that ''I am sure that he did.'' This was a mere conclusion of the witness based on his own knowledge as to the applicant's general debility and the impairment of the heart and lungs during the applicant's earlier life, and was not directed to what the applicant may have thought of his condition after living to the age of thirty-two years. But, even if the witness, Dr. Kelly, had intended to say that in his opinion the applicant did know that he was disabled by reason of this abnormality at the time he applied for the insurance, the witness nevertheless testified that ''it is not a disease.'' There being no proof to the contrary, it cannot be said that the answer to

the second question hereinbefore referred to was false, nor can it be said from the proof in the case that the applicant had "ever been told that you had any heart trouble." Moreover, there is no proof that he had ever consulted a physician because of his heart trouble or been treated for such trouble.

This Court held in the case of Citizens' National Life Ins. Co. v. Swords, 109 Miss. 635, 68 So. 920, cited in the later case of Fidelity Mutual Life Ins. Co. v. Elmore, 111 Miss. 137, 71 So. 305, that "There is a well-recognized distinction between 'representations' and 'warranties'. A warranty must be literally true and its materiality cannot be the subject of inquiry. A representation needs only to be substantially true, and if it is not material to the risk, in the absence of fraud, its falsity will not invalidate the policy."

In the case at the bar the proof is wholly insufficient to establish any fraud on the part of the applicant, and even though the information asked for is shown to have been material to the risk, and notwithstanding that it appears that except for the negative answer to these questions the policy would not have been issued, we are of the opinion that under the proof the answers in question were in fact true in the sense that the applicant would naturally have understood the questions. At least they were made without any conscious knowledge on the part of the applicant that he had heart trouble in the ordinary acceptation of that term. The policy, of which the application forms a part, is to be construed most strongly against the insurer, and the claim of the beneficiary should not be denied unless the proof should clearly disclose either that the applicant had ever been told that he had any heart trouble, unless it should be shown that he had "disease of the heart." This being true, we do not think that the cases of Fidelity Mutual Life Ins. Co. v. Miazza, 93 Miss. 18, 46 So. 817, 136 Am. St. Rep. 534; New York Life Ins. Co. v. Price, 5 Cir., 16 F. (2d) 660; and Home Life Ins. Co. v.

Madere, 5 Cir. 101 F (2d) 292, relied on by the appellant are controlling in the instant case.

Moreover, this Court in the case of National Life & Accident Ins. Co. v. Green, 191 Miss. 581, 2 So. (2d) 838, 3 So. (2d) 812, 813, 36 A. L. R. 1510, said in effect that statements made by an applicant which are representations and not warranties, leave ''open for proof the question of good faith and fraud.''

Being of the opinion that the answers to the questions involved were not misrepresentations within the meaning of the policy, when construed fairly to both parties, we hold that the judgment rendered in the trial court in favor of the plaintiff was proper; that the errors contained in the instructions complained of by the appellant, if error there be, became immaterial for the reason that we think that the plaintiff, as beneficiary in the policy, was entitled to a directed verdict in her favor under the undisputed facts hereinbefore set forth; and that therefore the judgment appealed from should be affirmed.

Affirmed.