### National Casualty Co. v. Johnson.

Nov. 23, 1953

No. 38972      44 Adv. S. 38      67 So. 2d 865

*Snow & Covington,* Meridian, for appellant.

*Clayton Lewis,* Philadelphia, for appellee.

HOLMES, J.

The appellee sued the appellant for certain hospital expenses in the amount of $233.50, alleged to have accrued to her under a policy of insurance issued to her by the appellant. The appellant denied liability upon the ground that certain answers given by the appellee to questions in her application for the policy were false, and that such falsity was a bar to her right of recovery. Upon the trial and at the conclusion of the evidence, the appellant requested and was denied a peremptory instruction. The submission of the case to the jury resulted in a verdict for appellee and judgment was entered accordingly. From this judgment the appellant prosecutes this appeal, assigning as error the action of the trial court in refusing its request for a peremptory instruction and in granting one of the instructions given to the appellee.

The record discloses substantially the following: The application for the insurance policy was signed by the appellee on April 30, 1951, and the policy was issued on May 9, 1951. The appellee was an employee of the glove factory in the City of Philadelphia, Mississippi. The employees of this factory had been carrying hospital insurance with the Interocean Insurance Company but for some reason this company cancelled all policies issued to such employees and the National Casualty Company, the appellant here, then undertook to insure these employees. The company had a representative at the factory who took the applications of all employees desiring the

4

insurance. The questions were read to the applicant by the representative who purported to write the answers as given by the applicant. Among the questions and answers set forth in appellee's application were the following: (1) Whether or not the appellee at the time of making the application was in good health and free from physical impairment or deformity, to which she answered in the affirmative; (2) whether or not the applicant had certain diseases such as hernia, cancer, appendicitis, etc., to which the applicant answered in the negative; (3) whether or not the applicant had medical or surgical advices or treatment or any departure from good health within the past five years, to which the answer written in the application was "appendectomy, cut hand"; (4) whether or not the applicant had been advised to be hospitalized or to have a surgical operation, to which she answered in the negative. It may be stated here that the appellee testified that the statement in the application that she had undergone an appendectomy was written therein by the representative and was not based on information to that effect given to the representative by her.

The application also contained the following question propounded to the applicant: "Do you agree that the falsity of any answer pertaining to the applicant . . . in this application for a policy shall bar the right of recovery thereunder if such answers materially affect either the acceptance of the risk or the hazard assumed by the company?" To this question the applicant answered in the affirmative.

The testimony with reference to appellee's treatment and physical complaints was given by her physicians. He said that his office records disclosed thirteen entries indicating times when he had seen or prescribed for the appellee over a period beginning May 1, 1949, and extending into the early part of 1952. Her complaints at various times over this period were the following: A

small place on her hand which the doctor made no note of; pain in the right side of her back and abdomen which the doctor said he made no note of because most women suffer from such pains; hurting across the back, lower chest, and around both hips, and a soreness in the pelvic region; tenderness in the right side of the abdomen which made the doctor suspect appendicitis, which developed only to be a possibility since her blood count was normal and no operation was performed; a cold and cough on one occasion; temperature of 99.4 at one time, and of 99.6 at another; complaint of a headache and of having vomited some blood; stomach upset; ingrown toe nail; arthralgia or a hurting in the joints; sore spot on her left leg which improved after penicillin was administered. The doctor sent her to the hospital for diagnosis on two or more occasions. The physician further testified that appellee was examined by Dr. Harrison of Jackson on May 26, 1951, and that his findings were as follows: Her physical examination was negative except for rather marked tenderness on palpation in the fourth left intercostal space at the left sternal border and laterally in this same intercostal space. Her blood pressure was 135 over 85, and she weighed 200¼ pounds. Her temperature and pulse were normal. The physical examination of the heart was normal except there was an ''aortic second sound a little bit accentuated and tambour like in tone.'' The heart otherwise showed normal and she showed good pulsation in the vessels of her feet; her radial pulse was rather hard to find but he could not make it disappear with any consistent maneuver. An electrocardiogram was done and it was normal. An X-ray was done and it showed the lung fields to be clear and the heart to be normal in size and contour. The kidney specimen showed negative. Dr. Harrison thought that her pain was intercostal neuralgia and neuritis type and not of cardiac origin. He advised appellee that she was not having heart

pains in his opinion, and that he saw no reason why she should not return to work.

It is further shown by the testimony of appellee's physician that the hospitalization for which the expenses are claimed was for treatment for migraine headaches, and that this trouble was in no manner related to her prior ailments and complaints. The report of Dr. Harrison, which followed his examination of the appellee less than thirty days after the signing of the application, showed her to have no organic or functional ailment and her physical condition was such that she was able to work.

It is the contention of the appellant that the statements in the application were warranties and that since they were not literally true, the appellee is barred of recovery on the policy. ██ ██ The distinction between a warranty and a representation in an application for insurance has been well recognized by this Court, and that distinction is that a warranty must be literally true and its materiality cannot be inquired into, whereas a representation, if substantially true and not material to the risk, will not invalidate the policy in the absence of fraud. Citizens National Life Insurance Company v. Swords, 109 Miss. 635, 68 So. 920; Life and Casualty Insurance Company of Tenn. v. Kelly, 202 Miss. 319, 32 So. 2d 120. However, the distinction between warranties and representations in the application for an insurance policy are not important in the solution of this case. The parties themselves in the policy contract have made the statements in appellee's application representations and not warranties, that is to say, that by the terms of the contract, recovery was to be barred by the falsity of the answers only in the event such answers materially affected either the acceptance of the risk or the hazard assumed by the company. In the case of Planters Insurance Company v. Myers, 55 Miss. 479, similar statements in the application were involved. In that case, it was agreed that the application was a

part of the contract and that any false statements or representations in such application of facts material to the risk should be deemed fraudulent and be an absolute voidance of the policy. The Court held that the insurance company assumed the risk merely on the faith that the statements of the assured were true in all respects material to the risk, but not on any warranty that they were literally true. The Court said: ''We think in this case that Myers is bound by his statements as representations and not as warranties.''

■■■ So in the case at bar the parties have agreed that the falsity of the answers will bar a recovery only in the event they materially affect either the acceptance of the risk or the hazard assumed by the company. The several illnesses and medical treatments which the appellee had and received were shown by the testimony of the doctor not to be related to migraine headaches, which was the ailment for which hospital benefits are claimed in this suit. Further, it appears from Dr. Harrison's examination of the appellee that less than thirty days after she signed the application she had no organic or functional disease and that her physical condition was such that she was able to work. Whether or not these previous ailments materially affected either the acceptance of the risk or the hazard assumed by the company was, in our opinion, a question of fact and an issue for the determination of the jury. Fidelity Mutual Life Insurance Co. v. Miazza, 93 Miss. 18, 46 So. 817; Fidelity Mutual Life Insurance Co. v. Miazza, 93 Miss. 422, 48 So. 1017. ■■■ This issue was submitted to the jury, and we think rightly so, and the jury resolved the issue in favor of the appellee, and in our opinion was amply warranted in so doing under the evidence.

■■■ It is further complained by the appellant that the court erred in granting to the appellee, who was plaintiff below, the following instruction: ''The court instructs the jury for the plaintiff that if you believe or find from a

preponderance of the evidence that the insurance policy or contract of insurance was in full force and effect between plaintiff and defendant at the time medical and hospital treatment was administered to plaintiff, and that plaintiff made no material misrepresentations in the application for the policy of insurance contract sued on, then it will be your duty to return a verdict in favor of the plaintiff against the defendant."

We find no error in this instruction. As we have heretofore pointed out, the parties themselves in the policy contract made the statements in the application representations and not warranties and agreed that the falsity of the statements would bar recovery only in the event that they materially affected either the acceptance of the risk or the hazard assumed by the company. The instruction complained of properly submitted to the jury the question of the materiality of the statements as affecting the risk.

▉▉ There is another ground, however, which renders untenable the appellant's complaint with respect to the foregoing instruction. The appellant asked and was granted the following instruction: "The court instructs the jury that if you believe from a preponderance of the evidence the plaintiff was asked the questions as set forth in the application and failed to give answers embodying all material illnesses she had suffered, it would be your duty to find for the defendant." Both this instruction and the foregoing instruction granted to the plaintiff submitted to the jury the question of the materiality of the answers as affecting the risk. Having requested the submission of this issue to the jury, the appellant is not in a position to complain of the submission of the same issue in the instruction granted to the plaintiff. A party can not complain of an instruction in harmony with one requested by him. Wilson v. Cook, 69 Miss. 694, 13 So. 351; Queen City Manufacturing Company v. Blalack, 18 So. 800. We are ac-

cordingly of the opinion that the judgment of the court below was correct and the same is affirmed.

Affirmed.

*Roberds, P. J.,* and *Hall, Lee,* and *Kyle, JJ.,* concur.