374 So.2d 1288 (1979)
COLONIAL LIFE & ACCIDENT INSURANCE COMPANY
v.
Mrs. Geraldine COOK.
No. 51435.
Supreme Court of Mississippi.
September 12, 1979.
*1289 Wells, Wells, Marble & Hurst, John E. Hughes, III, Jackson, for appellant.
Waller & Waller, Bill Waller, Jr., Jackson, for appellee.
Before SMITH, P.J., and LEE and BOWLING, JJ.
SMITH, Presiding Justice, for the Court:
Colonial Life and Accident Insurance Company has appealed from a judgment entered against it in favor of Mrs. Geraldine Cook, as beneficiary under three separate policies of insurance issued to her husband, Victor W. Cook, Jr. Throughout the record, Policy No. 42664-01 is referred to as Policy No. 1, Policy No. 1151-1124 is referred to as Policy No. 2 and Policy No. 3773-32785 is referred to as Policy No. 3. Those designations will be used in this opinion.
Policy Nos. 1 and 2 were each entitled "Select Risk Accident Policy" and Policy No. 3 as a life insurance policy. Mrs. Cook's husband, Victor W. Cook, Jr., was named as the insured in each of the policies.
On April 2, 1976, Cook died as the result of a gunshot wound under the following circumstances. Cook and several of his friends were at a service station in Bentonia. While there, a minor disturbance arose and Cook went to his truck and obtained his pistol, which he placed under his belt. When the service station closed, Cook entered his truck preparatory to leaving. The pistol discharged, striking him in the groin and causing his death. There is no evidence, and in fact no contention, that insured was shot by any other person, or that Cook had died as the result of any crime or foul play.
Colonial defended as to Policy Nos. 1 and 2 upon the ground that it had paid, and Mrs. Cook, the beneficiary, had accepted and appropriated to her own use the amount due under each of the policies, and that therefore an accord and satisfaction had resulted. As to Policy No. 3, Colonial's defense was that there had been a material misrepresentation in the application for the policy which had voided the policy.
Subsequent to Cook's death, Mrs. Cook, as beneficiary, submitted a claim and proof of loss to Colonial. With these documents she also submitted a copy of Cook's death certificate. The claim form signed by Mrs. Cook stated that the cause of Cook's death had been "accidental self-inflocted (sic) gun shot wound." The death certificate submitted stated that the cause of death was "self-inflicted gun shot wounds accidental."

POLICY NO. 1:
Policy No. 1 contained the following provision:
For death covered by the provisions of this policy, where it results from . ., shooting self-inflicted .. ., the amount payable shall be one-fifth the amount otherwise payable for accidental death... .
Colonial, on the ground that the death of Cook had resulted from a self-inflicted shooting, mailed to appellant its check in the amount of $750.00, payable to her as beneficiary, and representing one-fifth of the amount otherwise payable, for death by "self-inflicted shooting" under Policy No. 1, it being the position of Colonial that this was the amount due under the terms of the insurance contract.
*1290 On the reverse of this check, the following language appeared:
I hereby acknowledge that this payment is received in full settlement and release of all claims and liabilities under the policy issued by Colonial Life & Accident Insurance Company identified on the face of this draft and arising out of the accident on or about the date also shown thereon.
Mrs. Cook endorsed the check below the above release and testified at the trial that she knew and understood that the amount was tendered by Colonial in full payment and settlement of all claims under the terms of Policy No. 1, identified on the face of the check. The law in Mississippi as to accord and satisfaction is well settled.
In State Highway Department v. Duckworth, 178 Miss. 35, 42, 172 So. 148, 150 (1937) this Court said:
This court is thoroughly committed to the doctrine that, where money is paid with a recital that it is in full settlement of all demands, or of all accounts, or similar wording, when it is accepted, it is full settlement therefor, although there might be, in fact, more due than the recital in the check or warrant showed... .
This court is also committed to the doctrine that all antecedent agreements between parties are merged into the written contract when executed, and that parol evidence of such antecedent agreements is not admissible to contradict the recitals of the written instrument.
In May Brothers v. Doggett, 155 Miss. 849, 124 So. 476 (1929), the Court said:
It seems to be the general rule, as announced by the text-writers, (1 C.J. 554; 1 R.C.L. 191), that where a claim is unliquidated, or in dispute, the acceptance of a sum tendered by a debtor on condition that it be accepted in full settlement of the claim constitutes an accord and satisfaction; but in this state this rule applies to liquidated as well as unliquidated demands... .
(155 Miss. at 855, 124 So. at 478).
It is clear from the language of the release appearing on the reverse of the check and which was signed by Mrs. Cook that it was an effective release. Her testimony regarding this matter was to the effect that in endorsing the check she had done so knowing that the check was tendered by Colonial in full settlement of all of her claims under the policy, and she had accepted and used the proceeds for her own benefit, although she made a mental reservation that she was not accepting it as such. The execution of the release and acceptance of the money under the undisputed facts constituted an effective release of all claims and also was an accord and satisfaction, notwithstanding any secret mental reservation she may have had.
Mrs. Cook was not entitled to recover anything further under Policy No. 1, Colonial was entitled to a peremptory instruction in its favor, and it was error to submit the issue to the jury.

POLICY NO. 2:
Policy No. 2 contained a provision similar to that referred to above and contained in Policy No. 1, expressly limiting recovery under the undisputed circumstances in which Cook met his death, to one-fifth of the amount otherwise payable. This provision in Policy No. 2 was as follows:
For death covered by the provisions of this policy, where it results from . ., shooting accidentally self-inflicted, . ., the amount payable shall be one-fifth the amount otherwise payable for accidental death... .
Colonial tendered, and Mrs. Cook accepted and appropriated to her own use and expended, in settlement of her claim under Policy No. 2, the sum of $600.00, being one-fifth of the amount otherwise payable. This check, although there was no release appearing upon the back of it, according to Mrs. Cook's own testimony, was known by her to have been tendered by Colonial in full settlement of her claim under the policy. However, we think it is unnecessary to decide whether accord and satisfaction resulted from her action with respect to this for the reason that the amount tendered *1291 was one-fifth of the sum which otherwise would have been payable under the policy and was, therefore, the amount due under the circumstances and under the express terms of the policy in the light of the undisputed facts relating to the manner in which Cook had met his death. For this reason, if for no other, Colonial was entitled to a peremptory instruction to the jury to find in its favor as to Policy No. 2, and it was error to submit the issue to the jury.

POLICY NO. 3:
As to Policy No. 3, it is the contention of Colonial that there had been a material misrepresentation of fact in the application submitted by Cook. This misrepresentation is said to have consisted in false answers to these questions which appeared on the application.
3. Has Applicant (or Spouse) had any advice or treatment within last five years for heart disease, lung disease, high blood pressure, cancer or any other serious illness?
4. Has Applicant (or Spouse) consulted a physician or been confined to a hospital or sanitarium within last five years (other than for normal pregnancy)?
Both of the above questions were answered in the application in the negative.
It was developed in evidence, however, that as a matter of fact, applicant, Victor W. Cook, Jr. had been examined by a Dr. Allard on August 19, 1971. Dr. Allard obtained a blood pressure reading on that occasion of 170/120, and that this constitutes what is known as high blood pressure or hypertension. An anti-hypertensive drug was prescribed by the doctor.
The insurance contract provides:
All statements in the application will, in the absence of fraud, be deemed representations and not warranties, and no statement will avoid this policy or be used in defense to a claim under this policy unless it is contained in the application and a copy of the application is attached to this policy when issued. (Emphasis added).
It was developed at the trial that Mrs. Cook had been the "writer" of the family, and that she and Victor W. Cook, Jr., her husband, had consulted together and that it was she who had actually filled out the application and had signed it for him. Cook took this policy pursuant to solicitation by the company by mail, and no agent of the company ever called upon him. It is undisputed that the insured, Cook, enjoyed perfect health between the date of his examination by Dr. Allard, when his blood pressure had been 170/120, until the time of his death. Cook had been examined by Dr. Allard again on January 1, 1973, and found to be in perfect health, requiring no treatment of any kind. However, it does not appear that a blood pressure reading was taken at that time. Mrs. Cook testified that she ate with her husband every day and slept with him every night, that he had not been on any medication of any kind and that his health had been perfect. Colonial offered a witness, purporting to be qualified as an expert in the field of life insurance. This witness testified, in substance, that the concealment of the fact that on one occasion a reading of the insured's blood pressure had shown it to be 170/120 was sufficient cause for rejecting or declining to assume the risk.
The testimony of Mrs. Cook and the circumstances surrounding the making out and submission of the application are incapable of supporting a contention that either she or her husband had been guilty of intentional fraud. In National Casualty Co. v. Johnson, 219 Miss. 1, 67 So.2d 865 (1953), this Court said:
The distinction between a warranty and a representation in an application for insurance has been well recognized by this Court, and that distinction is that a warranty must be literally true and its materiality cannot be inquired into, whereas a representation, if substantially true and not material to the risk, will not invalidate the policy in the absence of fraud... .
(219 Miss. at 6, 67 So.2d at 867).
*1292 In the case at bar the terms of the policy itself provide that, in the absence of fraud, statements in the applications shall be representations and not warranties. In National Casualty Co. v. Johnson, supra, the Court said of the circumstances in that case:
Whether or not these previous ailments materially affected either the acceptance of the risk or the hazard assumed by the company was, in our opinion, a question of fact and an issue for the determination of the jury. Fidelity Mutual Life Insurance Co. v. Miazza, 93 Miss. 18, 46 So. 817; Fidelity Mutual Life Insurance Co. v. Miazza, 93 Miss. 422, 48 So. 1017. [Hn 3] This issue was submitted to the jury, and we think rightly so, and the jury resolved the issue in favor of the appellee, and in our opinion was amply warranted in so doing under the evidence.
(219 Miss. at 7, 67 So.2d at 867).
In the light of the totality of the evidence, including the strong evidence of insured's good health during the intervening period, no fraud having been perpetrated by the Cooks, we have concluded that it cannot be said as a matter of law that this single isolated occasion of an elevated blood pressure reading of 170/120, so materially affected the acceptance of the risk or expanded the exposure assumed by the company under the policy, as to avoid the policy, particularly where there is nothing in the record to indicate that this reading as to insured's blood pressure was more than a temporary condition or that it continued or was chronic. The trial court correctly submitted the issue of liability as to Policy No. 3 to the jury. The verdict of the jury finding for Mrs. Cook as to liability under Policy No. 3 is supported by the evidence. However, the amount of the verdict returned by the jury on this policy is in error. The policy provides for a $500 initial payment, plus $150 per month for 12 months, plus a second payment of $1,500.00, or a total of $3,800.00.
The case will be reversed and judgment will be entered here for appellant, Colonial Life And Accident Insurance Company, as to Policy No. 1 and Policy No. 2. As to Policy No. 3, the judgment will be reduced to $3,800.00 and for that amount will be affirmed.
REVERSED AS TO POLICIES NOS. 1 AND 2. JUDGMENT AS TO POLICY NO. 3 REDUCED TO $3,800.00 AND AFFIRMED IN THAT AMOUNT.
PATTERSON, C.J., ROBERTSON, P.J., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.