# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-CA-00180-SCT

*KATRICE JONES-SMITH AND NANCY JONES*

*v.*

*SAFEWAY INSURANCE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/02/2014 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN, III |
| TRIAL COURT ATTORNEY: | ROY GREGG ROGERS |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | TAUREAN DERNELL BUCHANAN |
| ATTORNEYS FOR APPELLEE: | JEREMY TRISTAN HUTTO |
| | WILLIAM H. CREEL, JR. |
| | JOSEPH WALTER GILL |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 09/03/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    For more than one hundred and thirty years, this Court has held that an insurance company may void a policy when the insured made material misrepresentations during the application process.[1]  When this insurance company learned that Michelle Busby had made a material misrepresentation when she applied for the motor-vehicle-liability policy at issue here, it had the policy declared void, so we affirm the circuit judge's grant of summary judgment.

---

[1] ***Coop. Life Ass'n of Miss. v. Leflore***, 53 Miss. 1, 12 (1876).

## FACTS AND PROCEDURAL HISTORY

¶2.     While driving his mother's 2003 Chevy Silverado in Rankin County, sixteen-year-old William Busby crashed into Kenneth Tarlton's car, which in turn collided with a car driven by Katrice Jones-Smith.  When William's mother, Michelle, applied to Safeway Insurance Company for an insurance policy on the Silverado, the application required her to warrant that she had provided the names of all regular frequent drivers of the covered vehicles, as well as all residents of her household fourteen years old or older.  Michelle failed to disclose that fifteen-year-old William resided in her home, and Safeway issued her a policy on the Silverado at a premium that was lower than the premium would have been had Safeway known about William.

¶3.     So after William's accident, Safeway sought a declaratory ruling that Michelle's failure to identify William was a material misrepresentation, rendering the policy voidable.  In response, Katrice—along with her mother Nancy Jones, who owned the car Katrice was driving—filed an answer and counterclaim asserting that William was at fault in the accident and that he was covered by the Safeway policy.  The parties filed competing motions for summary judgment, and the circuit judge—finding Michelle's failure to disclose William was a material misrepresentation—granted summary judgment to Safeway.

## ANALYSIS

¶4.     The appellants contend that, under this Court's recent decision in *Lyons v. Direct General Insurance Company of Mississippi*, the circuit judge was precluded from declaring

2

this policy void because an injured third party cannot be denied recovery up to the statutorily imposed minimum-policy limits.[2]  But *Lyons* is inapposite because it addressed an entirely distinct legal issue.

### I.     *Lyons v. Direct General* does not control this case.

¶5.     In *Lyons*, Roderick Holliday caused an accident while driving a car insured by his mother.[3]  When Machon Lyons, who was injured in the accident, asserted a claim against that policy, Direct General Insurance Company argued that its policy contained a named-driver exclusion for Roderick.[4]  Said differently, Direct did not dispute that it had issued a valid insurance policy which covered the car at the time of the accident.  Rather, Direct claimed that the admittedly valid policy excluded Roderick from coverage.

¶6.     On appeal, we concluded that the named-driver exclusion violated Mississippi's statutorily imposed minimum-liability insurance law.[5]  Our reasoning was two-fold.  First, we recognized that Section 63-15-4(2)(a) required an insurance company that issues a motor-vehicle-liability policy also to issue an insurance card which serves as proof that the policy provided the statutory minimum-liability limits.[6]  Second, we recognized per the

---

[2] *Lyons v. Direct Gen. Ins. Co. of Miss.*, 138 So. 3d 887 (Miss. 2014).

[3] *Id.* at 888.

[4] *Id.*

[5] *Id.* at 890-91.

[6] *Id.* at 890 (quoting Miss. Code Ann. § 63-15-4(2)(a) (Rev. 2013))

3

statutory language that "[t]his mandatory liability insurance requirement pertains to vehicles, not owners or operators."[7] Direct had issued an insurance card, representing that the policy provided the minimum limits required by law, so the named-driver exclusion was unenforceable.[8]

¶7. Our analysis in *Lyons*, which assumed a valid insurance policy had been issued, prohibited the insurance company from excluding statutorily required coverage, but it created no duty to issue a policy. It did no more than address an invalid exclusion within a valid insurance policy.

¶8. By contrast, the question in this case is not whether the terms of Michelle's policy with Safeway covered the accident, but whether the policy itself was voidable. And the longstanding, well-established law of this State renders voidable a policy issued as a result of material misrepresentations.

## II. The circuit judge correctly voided Busby's policy.

¶9. In 1876, in *Cooperative Life Association of Mississippi v. Leflore*, this Court stated:

Nothing is better settled, both in regard to insurance contracts and contracts of all sorts, than that an untrue statement by either party, as to a matter vital

---

[7] *Lyons*, 138 So. 3d at 890.

[8] *Id.* We note that, after our decision in *Lyons* exposed what many considered to be a glitch in the law, the Legislature promptly fixed it by amending Section 63-15-3(j)—effective July 1, 2015—to provide that "[l]iability insurance required under this paragraph (j) may contain exclusions and limitations on coverage as long as the exclusions and limitations language or form has been filed with and approved by the Commissioner of Insurance."

4

to the agreement, will avoid it, though there be no intentional fraud in the misrepresentation.[9]

There, the beneficiaries to a life-insurance policy brought an action in the Montgomery County Circuit Court to recover the proceeds of that policy after the insured's death.[10] The insurer defended by asserting that the insured had made material misrepresentations in the application for insurance.[11] The circuit judge instructed the jury that the company could void the policy only by a showing of actual fraud, and the jury found for the beneficiaries.[12] The company appealed and this Court set out a thorough explanation of the law regarding the effect of misrepresentations during the insurance-application process.

¶10.    This Court first considered whether insurance contracts should be considered under their own set of legal rules, or whether they should sit on equal footing with other contracts, controlled by the general law of contracts.[13] This Court stated:

> An immense amount of labor and learning is displayed in the books in the consideration of what are, and what are not, material matters in contracts of insurance, a false statement in relation to which will avoid the policy; and it is impossible to resist the conclusion, in perusing the cases, that the courts, in order to avoid supposed hardships in this class of suits, have been disposed to adopt other rules than those applicable to ordinary contracts. For this difference we can recognize no sound principle. Contracts of insurance are

---

[9] *Coop. Life Ass'n of Miss.*, 53 Miss. at 12.

[10] *Id.*

[11] *Id.*

[12] *Id.*

[13] *Id.* at 14-15.

neither *mala prohibita* nor *mala in se*, and, where entered into by persons *sui juris*, are to be regulated and determined by the same rules that govern ordinary agreements, with neither more nor less favor than is shown in other cases.[14]

The Court also posited that:

> No man can read the history of the struggle between the courts and the insurance companies on the question of what false statements, made by the applicant, will avoid the policy, as that history is developed in the adjudged cases, without perceiving a manifest disposition to apply to such agreements a rule far more rigid than that which governs ordinary contracts. However commendable the disposition to protect unsuspecting, and frequently ignorant, men from the evil consequences of agreements into which they have been entrapped by cunningly and obscurely worded conditions, so written or printed as to escape observation, there can be no justification for disregarding, in their behalf, fundamental principles of law, or relieving them from engagements as to which there is no pretence for charging fraud. If the insurance companies, conforming their policies to the requirements of each successive decision, have protected themselves against all possible loss by any misrepresentation, no matter how insignificant or unintentional, it would be most unseemly in the courts to seek, by new exactions, to nullify these advantages. It is neither the duty nor the right of courts to protect adults against the consequences of their agreements incautiously entered into. Their functions are exhausted when they construe and enforce them as written.[15]

¶11. In other words, jurists had been reluctant to invalidate insurance policies based on the misrepresentations of the insured when the invalidation would deny innocent beneficiaries the right to recover, giving rise to the idea that insurance policies should not be treated equally with other contracts. But, in this Court's opinion, the desire to avoid the unpalatable result was not a "sound principle" upon which the Court could recognize a distinct law of

---

[14] *Id.*

[15] *Id.* at 18-19.

insurance contracts. Instead, insurance contracts were "to be regulated and determined by the same rules that govern ordinary agreements, with neither more nor less favor than is shown in other cases."[16]

¶12. Then, having determined that insurance contracts should be treated like all other contracts, the Court explained when a contract becomes invalid based on misrepresentations in the application process. The Court rejected the circuit court's instruction that actual fraud need be shown, and instead explained that the relevant law was that of warranties and material misrepresentations.[17] The Court held that "[n]othing is better settled, both in regard to insurance contracts and contracts of all sorts, than that an untrue statement by either party, as to a matter vital to the agreement, will avoid it, though there be no intentional fraud in the misrepresentation."[18]

¶13. That is, when "the misstatements of which the applicant was guilty were manifestly as to matters material to the contract, . . . according to all the authorities, [they] avoided the policy."[19] The Court also distinguished misrepresentations from warranties, stating that "[i]f parties have deliberately agreed that the validity of their contract shall depend upon the truth

---

[16] *Id.* at 15.

[17] *Id.* at 18.

[18] *Id.* at 12.

[19] *Id.* at 18.

7

or falsehood of certain statements, neither court nor jury can say that the matters about which the false statement is made are too trivial to work a forfeiture of its advantages."[20]

¶14.    Then, in the 1908 case *Fidelity Mutual Life Insurance Company v. Miazza*, this Court expanded on these principles, stating that "[i]t is the universal rule that any contract induced by misrepresentation or concealment of material facts may be avoided by the party injuriously affected thereby."[21]  The Court explained that under this "principle of general application," when "the misstatement is material, it can make no difference as to whether or not it was made in good faith."[22]

¶15.    There, an insured obtained life insurance by failing to disclose previous illnesses when requested to do so in the application.[23]  This Court found that the insurance company could avoid paying the life-insurance proceeds to the insured's beneficiaries because "[i]n this case it can hardly be doubted that, if there had been a full disclosure on the part of Miazza as to the character of his illness in 1903, it might reasonably have influenced the company not to make the contract of insurance."[24]

---

[20] *Id.* at 15.

[21] *Fid. Mut. Life Ins. Co. v. Miazza*, 93 Miss. 18, 46 So. 817, 819 (1908).

[22] *Id.*

[23] *Id.* at 817-18.

[24] *Id.* at 819.

¶16.     This law, though old, has persisted.  Eighty years later, an insured submitted a claim for damages his truck incurred in an accident, and the insurer denied coverage based on the insured's failure to disclose two speeding tickets when asked to do so in the application process.[25]  The Court reiterated the distinction between warranties and representations, and that any warranty that is not literally true will invalidate the policy, while a misrepresentation will invalidate the policy only if it is not substantially true and material.[26]

¶17.     Because the policy and application were in conflict as to whether the answers were warranties or representations, they were considered representations, as the characterization in the policy had to prevail and because ambiguities must be construed against the insurer.[27] Analyzing the materiality requirement for a misrepresentation to invalidate an insurance policy, the Court explained that "[t]he materiality of a representation is determined by the probable and reasonable effect which truthful answers would have had on the insurer."[28]

¶18.     Applying this century-old precedent on insurance contracts to the facts before us today, there can be no doubt that the circuit judge properly voided the policy issued by Safeway.  The application required Michelle to warrant that she had provided the names of

---

[25] *Sanford v. Federated Guar. Ins. Co.*, 522 So. 2d 214, 215-16 (Miss. 1988).

[26] *Id.* at 216 (quoting *Colonial Life & Accident Ins. Co. v. Cook*, 374 So. 2d 1288, 1291 (Miss. 1979)).

[27] *Sanford*, 522 So. 2d at 217 (citing *Nat'l Life and Accident Co. v. Miller*, 484 So. 2d 329, 337 (Miss. 1985), *overruled on other grounds by Miss. Bar v. Attorney ST*, 621 So. 2d 229, 232 (Miss. 1993)).

[28] *Sanford*, 522 So. 2d at 217.

9

all residents of her home over the age of fourteen. She admittedly failed to do so by failing to disclose fifteen-year-old William, to whom she even gifted a car covered by the policy. Because the parties to the contract characterized this assertion as a warranty, its materiality need not be questioned, and the circuit judge properly voided the contract because the statement was not literally true.

¶19. And we would reach the same result even if we characterized Michelle's failure to disclose William as a misrepresentation, because it was both material and not substantially true. The representation was entirely false because the application required Michelle to disclose all household residents over age fourteen and she did not provide all of the names she was required to provide. The representation was material because, without a 209 percent increase in Michelle's rate, Safeway would not have issued the policy. So, under either standard, the circuit judge reached the right result.

## CONCLUSION

¶20. Because Michelle obtained her Safeway policy through what was at best a material misrepresentation, we affirm the circuit judge's decision to void the policy.

¶21. **AFFIRMED.**

**WALLER, C.J., RANDOLPH, P.J., LAMAR, CHANDLER, PIERCE AND COLEMAN, JJ., CONCUR. KITCHENS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.**

**KITCHENS, JUSTICE, DISSENTING:**

10

¶22.    Because I believe Mississippi Code Section 63-15-4(2) (Rev. 2013) and this Court's decision in *Lyons v. Direct General Insurance Company of Mississippi*, 138 So. 3d 887 (Miss. 2014), prohibit Safeway's voiding Busby's automobile insurance policy, I respectfully dissent.

¶23.    Mississippi law requires liability insurance for every motor vehicle operated on the streets, roads, and highways of the state:

> Every motor vehicle operated in this state shall have an insurance card maintained in the motor vehicle as proof of liability insurance that is in compliance with *the liability limits* required by Section 63-15-3(j). The insured parties shall be responsible for maintaining the insurance card in each motor vehicle.

Miss. Code Ann. § 63-15-4(2)(a) (Rev. 2013) (emphasis added). Furthermore, the relevant minimum liability insurance limits under Mississippi law are:

> . . . . in the amount of Twenty-five Thousand Dollars ($25,000.00) because of bodily injury to or death of one (1) person in any one (1) accident, and subject to said limit for one (1) person, in the amount of Fifty Thousand Dollars ($50,000.00) because of bodily injury to or death of two (2) or more persons in any one (1) accident, and in the amount of Twenty-five Thousand Dollars ($25,000.00) because of injury to or destruction of property of others in any one (1) accident.

Miss. Code Ann. § 63-15-3(j) (Rev. 2013).

¶24.    This Court recently interpreted these statutes with regard to named-driver exclusions in *Lyons*. In that case, Machon Lyons suffered severe injuries in a single-car automobile accident when a Chevrolet Lumina automobile driven by Roderick Holliday, in which Lyons was a passenger, collided with a tree. *Lyons v. Direct Gen. Ins. Co.,* 138 So. 3d 887, 888

11

(Miss. 2014). Holliday's mother, Daisy Lang, had insured the Chevrolet Lumina through Direct General Insurance Company of Mississippi. *Id.* Lang's liability insurance policy included a provision that specifically excluded her son, Roderick, from coverage under the policy. *Id.* Accordingly, Direct denied coverage for Lyons's injuries. *Id.*

¶25. The circuit court granted summary judgment in favor of Direct, finding that the policy clearly and specifically excluded coverage of Holliday. *Id.* Lyons appealed, arguing that Lang's policy covered the damages incurred by Holliday because Mississippi law requires minimum limits of liability insurance coverage for all permissive drivers. *Id.*

¶26. The Mississippi Court of Appeals reversed, holding that an insured's policy must cover all permissive drivers, rendering the named-driver exclusion void up to the amount of the policy's minimum-coverage limits. Although the Court of Appeals reached the right result, it cited an incorrect statute in arriving at that result. *Lyons*, 138 So. 3d at 932-33. This Court granted *certiorari*. *Lyons*, 138 So. 3d at 887.

¶27. We looked to Section 63-15-4(2)(b), which provides that an "insurance company issuing a policy of motor vehicle liability insurance as required by this section shall furnish to the insured an insurance card *for each motor vehicle*. . . ." Miss. Code Ann. § 63-15-4(2)(a) (Rev. 2013) (emphasis added). Moreover, Section 63-15-4(2)(a) requires that "*[e]very motor vehicle operated in this state shall have an insurance card* maintained in the motor vehicle as proof of liability insurance . . . ." Miss. Code Ann. § 63-15-4(2)(a) (Rev. 2013) (emphasis added). Given this express statutory language, the Court held that the

"mandatory liability insurance requirement pertains to vehicles, not owners or operators." ***Lyons***, 138 So. 3d at 890. Every operating motor vehicle in Mississippi therefore must meet the statutorily required minimum-coverage requirements of $25,000 for injury to one person, $50,000 for injury to two or more people, and $25,000 for property damage. ***Id.***, *accord* Miss. Code Ann. § 63-15-3(j) (Rev. 2013). Thus, a liability policy which purports to exclude the statutorily required minimum coverage for certain drivers "fails to comply with the statutory mandate." ***Id.***

¶28. To resolve this case, this Court should determine whether the Busby vehicle was insured, not whether the driver, William Hunter Busby, was insured. It is uncontested that Michelle Busby had purchased from Safeway an automobile liability insurance policy covering the 2003 Chevrolet Silverado truck. The minimum-coverage requirements were in compliance with the statute. That vehicle, therefore, was covered by the policy in accordance with Mississippi law.

¶29. Safeway argues that ***Lyons*** and Section 63-15-4(2) do not abrogate an insurance company's common law right to void an insurance policy due to material misrepresentations. It also argues that no Mississippi law prohibits an insurance company's rescission of an insurance contract for material misrepresentations. But the duty to provide minimum-limits liability insurance coverage for a covered vehicle is absolute. ***Id.***

¶30. A common rule of statutory construction is *expressio unius est exclusio alterius,* or "expression of the one is exclusion of the other." *See **McCoy v. McRae**,* 204 Miss. 309, 317

(Miss. 1948). This Court has explained this familiar principle: "where a statute enumerates and specifies the subject or things upon which it is to operate, it is to be construed as excluding from its effect all those not expressly mentioned or under a general clause." *Southwest Drug Co. v. Howard Bros. Pharmacy of Jackson, Inc.*, 320 So. 2d 776, 779 (Miss. 1975) (citing *Akers v. Estate of Johnson*, 236 So. 2d 437 (Miss. 1970)). With regard to the statute at issue, this Court held in *Lyons* that "the Legislature passed a lawful statute that unequivocally requires automobiles to maintain minimum-liability coverage in the amount of $25,000." *Lyons*, 138 So. 3d at 890. Moreover, the Court held that the statute at issue did not contain or authorize any exclusions. *Id.* The Legislature therefore "possesses the sole power to authorize such exclusions, and automobile insurers are not free to escape the statutorily required minimum-liability coverage simply by inserting an exclusion of their choice—no matter how well-reasoned—into their policies." *Id.* This Court further reasoned that "[r]equirements are just that—requirements—and nothing in the statute suggests that exceptions exist, or that insurance companies are authorized to include them in their policies." *Id.* at 891. In light of the Legislature's refusal to grant an exception to mandatory minimum coverage for vehicles and this Court's holding in *Lyons*, it is clear that Safeway is not at liberty to rescind coverage purchased from it for a vehicle, even if the reason for the rescission may otherwise be justified under traditional contract law. If the Legislature had intended to allow automobile insurance companies an exception to their obligation to pay the mandatory minimum-liability limits for a party's material misrepresentation, it could have

14

included such an exception in the statutory language. It did not, which renders Safeway's claimed exception an invalid exclusion.

¶31.    Safeway also argues that, under the terms of the insurance policy between itself and Michelle Busby, it is allowed to void the contract if it discovers material misrepresentations on the part of Busby.[29] First, it is clear that Mississippi statutes supersede rules of traditional contract law and interpretation: "[i]t is well settled in Mississippi that in the event of a conflict between the language of an automobile liability insurance policy and the statutory requirement, the statutory provisions are incorporated into and become part of the policy." *State Farm Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 601 F. Supp. 286, 289 (S.D. Miss.1984) (internal citations omitted). Furthermore, parties are not at liberty to enforce contract provisions which contradict Mississippi law and public policy. *Smith v. Simon*, 224 So. 2d 565 (Miss. 1969) ("There is no doubt that the courts have the duty and

---

[29]The policy issued to Busby states:

> The statements made by **you** in the application are deemed to be warranties. Any false or misleading information provided by **you** on the application to us which materially affects the acceptance or rating of the risk by us, by either direct misrepresentation, omission, concealment of facts or inconsistent statements, will result in your **policy** being null and void from its effective date. This paragraph shall also apply to misstatement of use and omission of fact. We do not provide coverage for any **insured** who has made fraudulent statements engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

(Emphasis in original.)

the power to declare void and unenforceable contracts made in violation of law or in contravention of the public policy of the state."). Finally, Safeway's argument ignores this Court's holding in *Lyons*. In *Lyons*, the party who incurred the damages was specifically excluded from the terms of the contract, and the Court held that the insurance company still was required to provide minimum-limits liability insurance coverage. *Lyons*, 138 So. 3d at 891. Therefore it is clear that, insofar as Safeway's Fraud and Misrepresentation policy clause contradicts Mississippi's law requiring minimum-liability coverage, Mississippi law takes precedence over the contrary provisions of the insurance contract and renders them invalid.

¶32. Moreover, it is not established in the record that the alleged misrepresentation, that William Busby was a member of Michelle Busby's household, was material. We have held that a " a representation, if substantially true and not material to the risk, will not invalidate the policy in the absence of fraud." *National Cas. Co. v. Johnson*, 219 Miss. 1, 67 So. 2d 865, 867 (1953). Here, Safeway has not proven that the omission of William Busby was material to the risk assumed by the company nor has it proven that Michelle Busby engaged in fraud in her execution of the policy application. Although Safeway insurance introduced evidence after it sought to void Michelle Busby's policy that showed her rate would have been 209% higher if she had listed William Busby on her policy application, there is no evidence in the record that Michelle Busby knew, at the time she executed her insurance application, that the omission of William Busby had any effect on the terms or cost of her

16

policy. Without proof in the record that the parties mutually knew that this was a material term in the policy application or that it materially affected the risk assumed by the insurance company, it cannot be deemed material *post-hoc*, merely because the insurance company says it would have acted in a different way as a result.

¶33. Safeway is not divested of its ability to control, within the bounds of applicable laws and regulations, the language of its insurance contracts. This Court has held that "[t]he parties indeed may negotiate—and automobile insurers may include—exclusions from coverage, so long as those exclusions do not emasculate the statutorily required minimum coverage." *Lyons*, 138 So. 3d at 891. Insurance companies are even allowed to void their policies for parties' material misrepresentations. Furthermore, they are entitled to deny coverage in excess of the statutory minimum after the discovery of a material misrepresentation. *See id.* But they are prohibited from doing so when it prevents an aggrieved party from recovering damages from the minimum-liability insurance limits. *See id.*

¶34. It is clear that Mississippi law, without exception, requires minimum-liability insurance limits for all over-the-road motor vehicles.[30] Moreover, inasmuch as an insurance

---

[30] In a very narrow exception to the State's mandatory liability insurance statutes, certain parties are allowed to self-insure:

(1) Any person in whose name more than 25 motor vehicles are licensed may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the department as provided in subsection (2) of this section.

17

company was not permitted to void coverage for a specifically excluded driver in *Lyons*, it follows that a carrier cannot void coverage based on a misrepresentation, material or otherwise, or omission in the identification of the drivers in the household over the age of fourteen years. I therefore respectfully dissent.

**KING, J., JOINS THIS OPINION.**

---

(2) The department may, in its discretion, upon the application of a person, issue a certificate of self-insurance when it is satisfied that such person is possessed and will continue to be possessed of ability to pay judgments obtained against such person.

(3) Upon not less than five days notice and a hearing pursuant to such notice, the department may upon reasonable grounds cancel a certificate of self-insurance. Failure to pay any judgment within thirty days after such judgment shall have become final shall constitute a reasonable ground for the cancellation of a certificate of self-insurance.

Miss. Code Ann. § 63-15-53 (Rev. 2013).