**Mary Alice PEDERSEN, Plaintiff,**

**v.**

**CHRYSLER LIFE INSURANCE COMPANY, Defendant.**

**No. EC87–95–S–D.**

United States District Court, N.D. Mississippi, E.D.

Jan. 15, 1988.

John L. Long, Billy W. Shelton, Tupelo, Miss., for plaintiff.

Calvin L. Wells, Richard A. Montague, Jr., Wells, Moore, Simmons, Stubblefield & Neeld, Jackson, Miss., for defendant.

OPINION

SENTER, Chief Judge.

Mary Alice Pedersen brings this action pursuant to 28 U.S.C. § 1332 alleging that the defendant insurance company wrongfully denied a claim for life insurance made under the terms of a policy issued by the insurer. This cause comes before the court on defendant's motion for summary judgment.

### Factual Background

According to the complaint, Erik W. Pedersen and his wife, Mary Alice Pedersen, purchased a 1985 Plymouth Reliant from a Tupelo car dealer on July 13, 1985. Along with the purchase, the Pedersens also obtained a life insurance policy from Chrysler Life in the event that Erik Pedersen died before paying for the car. Mr. Pedersen paid the premium in a timely fashion, and the insurance policy became effective immediately.

On January 12, 1986, six months after purchasing the new car and the life insurance, Erik Pedersen died from cardiomyopathy and heart failure. Shortly thereafter, Mary Alice Pedersen filed a claim for benefits with Chrysler Life seeking to have the outstanding indebtedness paid off with the proceeds. Chrysler Life denied her claim on April 7, 1986, and Mrs. Pedersen filed suit on March 30, 1987, almost one year later. In addition to contractual damages, Mrs. Pedersen seeks an award of both extracontractual compensatory damages and punitive damages as a result of her insurer's alleged misconduct. Since the parties are diverse and the amount in controversy exceeds ten thousand dollars, this court is vested with subject matter jurisdiction. 28 U.S.C. § 1332.

In his application for life insurance, Erik Pedersen stated, *inter alia*, that he had not been attended to by a physician for treatment of heart disease within the six-month period preceding the effective date of the policy. This application was signed by Pedersen below the comment that the information contained therein was true and accurate.

When the Pedersens filled out the application, they were assisted by an agent of Chrysler Life, George Sheffield. According to the sworn testimony given by Sheffield during his deposition, he specifically asked if Mr. Pedersen had been hospitalized within the past six months, and was told by Mrs. Petersen that her husband had a heart problem prior to the six month period, but had not been treated within the six-month period. Sheffield further states that he was not aware that this statement was false when he helped the Pedersens fill out their application.

According to Mrs. Pedersen, neither she nor her husband were asked about their health while they filled out the insurance forms. Mrs. Pedersen admits that the application contains incorrect information and is signed by her husband, but states that both she and her husband failed to read it before he signed it. Mrs. Pedersen asserts that she was unaware of any misrepresentation until it was called to her attention later on, and states that she never intended to mislead the company in any event.

Chrysler Life's investigation revealed that Mr. Pedersen was in fact suffering from heart problems when he filled out the application and had visited a physician at least six times between January 21, 1985, and July 31, 1985, and four of the visits were specifically related to heart trouble. Medical records obtained from the North Mississippi Medical Center showed that Mr. Pedersen entered the hospital on March 19, 1985, and April 15, 1985, for treatment of congestive heart failure. Based on these facts, Chrysler Life chose to declare the policy void *ab initio* and refund all premiums tendered with interest. The ground for this action was that Mr. Pedersen had made material misrepresentations in the course of applying for insurance, thus justifying recission under Mississippi law.

### Legal Analysis

■ The Mississippi legislature has permitted insurance companies doing business in the state to deny claims based upon the defense of material misrepresentation. Miss.Code Ann. § 83–9–11 (1972). If a party applying for insurance makes a misstatement of a material fact in the application, the insurer is entitled to declare the policy issued in reliance thereon void *ab initio*. *Nationwide Mutual Fire Ins. Co. v. Dungan*, 634 F.Supp. 674, 681 (S.D.Miss. 1986), *affirmed* 818 F.2d 1239 (5th Cir. 1987); *Dukes v. South Carolina Insurance Co.*, 590 F.Supp. 1166, 1168–69 (S.D. Miss.1984), *affirmed* 770 F.2d 545 (5th Cir. 1985).

The Mississippi Supreme Court explained in *Fidelity Mutual Life Insurance Co. v. Miazza*, 93 Miss. 18, 46 So. 817 (1908), that any contract induced by a misrepresentation or concealment could be avoided by a party, such as an insurance company, which is adversely affected by the misstatement. *Id.* 46 So. at 819.

If the applicant for insurance undertakes to make a positive statement of fact, if it be material to the risk, such fact must be true. It is not sufficient that he believes it true, but it must be true. It is not sufficient that he believes it true, but it must be so in fact, or the policy will be avoided. Provided, always, that the misstatement be about a material matter. If the applicant is not informed as to any question asked in the application, he should so state, and there can be no misrepresentation.

\* \* \* \* \* \*

This is simply a general principle of contract law which the special nature of insurance contracts does not alter. The parties entered into this contract under a mistake of fact. Had that mistake been shown, the insurance company would not have written the policy. Whether the fact was intentionally or unintentionally misstated by the plaintiffs is unimportant.

*Id.* 46 So. at 819.

■ The burden rests on the party seeking to void a contract based upon a material misrepresentation to establish the existence of the factual misstatement and its materiality by clear and convincing evidence. *Gardner v. Wilkinson*, 643 F.2d 1135, 1136, n. 3 (5th Cir.1981) (applying Mississippi law); *Brewster v. Bubba Oustalet, Inc.*, 231 So.2d 189 (Miss.1970).

In the case at bar, Mrs. Pedersen contends that her husband never read the application before signing it and did not intend to mislead Chrysler Life. Conceding these facts as true, the insurer points out that a person cannot avoid a written contract which he has entered into merely because he failed to read it or have it read to him. Under Mississippi law, unless a party was induced not to read the contract or have it read to him by fraudulent representations made by another party, he will be required to abide by its terms. *See, e.g., Continental Jewelry Co. v. Joseph*, 140 Miss. 582, 585, 105 So. 639 (1925). Moreover, since an insurer is not required to show an intent to deceive in order to void a policy based on misrepresentations, Mr. Pedersen's good faith is irrelevant to resolving the instant dispute.

Under Rule 56, Fed.R.Civ.P., summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

In order to defeat a summary judgment motion, the nonmoving party must present evidence which would permit a reasonable trier of fact to find against the moving party. A mere scintilla of evidence is not sufficient to justify denial of a properly supported summary judgment motion. *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir.1987).

**A. False Statement of Fact**

On the insurance application, Erik Pedersen represented[1] that he had not seen a physician for treatment of, *inter alia*, heart trouble in the six-month period preceding July 13, 1985, the effective date of the policy.

Chrysler Life's investigation was conducted by Robert L. Porter. In his deposition, a copy of which has been submitted to the court for review, Porter details how he learned of Mr. Pedersen's visits to his treating physician, Dr. Antone Tannehill, for heart trouble between January 21, 1985, and July 13, 1985. Porter also discusses Pedersen's stay in the North Mississippi Medical Center and his treatment there for heart failure on March 19, 1985, and April 15, 1985. Copies of the medical records appear as exhibits to the instant motion and support Porter's statements.

Mrs. Pedersen does not contest the fact that her husband was being treated for heart trouble in the six-month period previously referred to. The court, therefore, finds that Chrysler Life has proven the existence of a misrepresentation by clear and convincing evidence.

**B. Materiality of the Misstatement**

Maura R. Cook is the manager of the claims department for Chrysler Life. In his affidavit, Cook stated that Chrysler Life relies on the health representations made by customers when applying for insurance. Cook also states that Chrysler Life does not issue a life insurance policy if the applicant has been treated for heart failure within six months prior to the date of the application. Had Chrysler Life known of Erik Pedersen's medical history, Cook asserts that it would not have issued the policy sued on in the present case.

Mrs. Pedersen submits no evidence to refute the assertions of Maura Cook, and the court finds that Chrysler Life has met its burden with regard to the element of materiality.

**C. Silence on the Part of the Soliciting Agent as to Prior Medical History**

Plaintiff's sole contention is that the soliciting agent failed to ask her or her hus-

---

**1.** The nature of this representation is in dispute. According to the plaintiff, agent Sheffield marked down that Erik Pedersen had no health problems without first asking her husband the question. Assuming *arguendo* that this is true, the existence of fraud is still not established. Erik Pedersen signed the contract, and the plaintiff does not contend that he was prevented from reading it beforehand. Had Sheffield *asked* the question and then marked down an incorrect response, then the insurer would be bound by its agent's knowledge. *See Reserve Life Ins. Co. v. McGee*, 444 So.2d 803 (Miss. 1983); *Blue Cross and Blue Shield of Mississippi v. Campbell*, 466 So.2d 833 (Miss.1984).

band about his prior medical history, and they were completely unaware that such a question was contained in the application when they signed it.

Chrysler Life's soliciting agent, George Sheffield, disputes plaintiff's recollection of their meeting by asserting that he did ask Mr. Pedersen about his health. This factual dispute would be sufficient to defeat summary judgment it it were material to the resolution of the case.

■ In *Miazza, supra,* the Mississippi Supreme Court rejected the same argument advanced by the plaintiff in the case at bar. Absent proof that a soliciting agent concealed a provision of the application or otherwise misled the insured, his silence will not entitle the insured to avoid his obligations under the law.

In the case *sub judice,* there is no indication that George Sheffield acted in a misleading or fraudulent manner. The court, therefore, finds that the plaintiff has failed to establish any reason to deny Chrysler Life's entitlement to summary judgment on the contractual claim.

■ In order to recover extracontractual compensatory damages and punitive damages, a party must show that the insurance company denied her claim a) without a legitimate or arguable reason and b) in such a manner as to constitute maliciousness, reckless disregard for her rights, or gross negligence tantamount to wilful and wanton behavior. *Aetna Casualty Co. v. Day,* 487 So.2d 830 (Miss.1986).

The court has previously determined that Chrysler Life is entitled to summary judgment on the underlying contract claim. Under such circumstances, the plaintiff's right to recover extracontractual and punitive damages is likewise barred. *Id.*

### Rule 11 Sanctions

■ Counsel for Chrysler Life seeks an award of attorney's fees and costs incurred in connection with defending the instant action. Rule 11, Fed.R.Civ.P., specifically provides that:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

The rule imposes an objective, rather than a subjective, standard of reasonableness upon an attorney in the course of litigation. *Robinson v. National Cash Register Co.,* 808 F.2d 1119 (5th Cir.1987); *Ruffin v. ITT Continental Baking Co.,* 636 F.Supp. 857 (N.D.Miss.1986). *See generally,* Monroe, "Sanctions—A Special Problem for Federal Litigators," 34 Fed. Bar News & J. 213 (1987); Larimore, "Judicial Sanctions Under Federal Rule 11," 29 For the Defense 17 (March 1987); Note, "Plausible Pleadings: Developing Reasonable Standards for Rule 11 Sanctions," 100 Harv.L.Rev. 630 (1987).

■ The question of whether Rule 11 sanctions should be imposed is now a legal question because the rule's language is mandatory—if a violation occurs, sanctions must be imposed. *Thomas v. Capital Security Services, Inc.,* 812 F.2d 984, 989 (5th Cir.1987); *pending rehearing en banc,* 822 F.2d 511 (5th Cir.1987); *Robinson v. National Cash Register Co.,* 808 F.2d 1119, 1126 (5th Cir.1987). *But see Bell v. Bell,* 801 F.2d 396 (5th Cir.1986) (unpublished), *cert. denied,* ── U.S. ──, 107 S.Ct. 1300, 94 L.Ed.2d 156 (1987).

■ While imposition of sanctions is a legal question, the rule provides that the

amount or type of sanction imposed is within the district court's discretion. *Thomas, supra.* Nevertheless, the court notes that under current practice, there are no more "free passes." *Id.*

In this circuit, a district court is required to make specific findings of fact and conclusions of law on each requirement of Rule 11 in each instance where sanctions are requested. *Thomas v. Capital Security Services, Inc., supra.*

Findings are required as to:

a. whether reasonable inquiry into the facts was made;

b. whether reasonable inquiry into the law was made;

c. whether the action was taken to harass, delay, or increase unnecessarily costs of litigation; and

d. whether an attorney has met his continuing obligation to reevaluate his litigation position.

*Id.*

a. Factual Inquiry

Counsel for the plaintiff presumably interviewed his client before filing suit. Since a conflict developed between what actually occurred when the Petersons filled out their application, counsel was required to depose agent Sheffield to get his side of the story.

 Chrysler Life's reliance upon the misrepresentation was not established until testimony from claims manager Maura Cook was obtained. The plaintiff's factual investigation was not completed until this occurred, and the court finds that she acted reasonably under the circumstances.

b. Legal Inquiry

Mississippi law controlling this case is stated in *Miazza, supra, Dungan, supra,* and *Dukes, supra.* Nevertheless, the state supreme court has suggested at times that a soliciting agent has a duty to read the questions on an application to potential customers. In *Jefferson Life & Casualty Co. v. Johnson,* 120 So.2d 160 (Miss.1960), the court states that "where the agent who undertakes the preparation of the application fills in incorrect answers without asking the applicant the questions," then the insurance company *"will be bound by the knowledge acquired by the agent* just as if the agent had correctly written the answers in the application." *Id.* at 162. Although the element of knowledge is not present in the case at bar, the court finds that the law is sufficiently unclear to permit an attorney to reasonably argue the theory of estoppel in such a situation.

c. Intent to Harass, Delay, or Unnecessarily Increase the Cost of Litigation

There is no evidence that the plaintiff filed suit or opposed the instant motion to harass the defendant, delay the resolution of the dispute, or otherwise increase the cost of litigation unnecessarily.

d. Duty to Reevaluate

All attorneys are under a continuing duty to reevaluate their litigation position in light of Rule 11. As this court noted in *Woodfork v. Gavin,* 105 F.R.D. 100 (N.D. Miss.1985):

The court believes that [Rule 11] obligates an attorney who signs a document not only to conduct a reasonable investigation into the facts before filing, but also continually review, examine, and reevaluate his position as the facts of the case come to light. If an attorney subsequently becomes aware of information or evidence which reasonably leads him to believe there is no factual or legal basis for his position, giving due regard to the standard of proof, then that attorney is under an obligation to reevaluate the earlier certification of the cause under Rule 11.

*Id.* at 104.

The record in the case *sub judice* does not reflect that plaintiff's counsel was unjustified in bringing this action initially or in maintaining it through discovery. Counsel fulfilled his duty to reevaluate his client's position under the circumstances.

**Conclusion**

For the aforementioned reasons, the court finds that Chrysler Life is entitled to summary judgment with respect to plaintiff's claims for contractual, extracontrac-

tual, and punitive damages. The court declines, however, to sustain defendant's request for Rule 11 sanctions. Although weak, the decision by counsel to advocate his client's cause shall not subject him to a penalty under these circumstances.

An order shall issue in conformity with this opinion.