**GOLDEN RULE INSURANCE COMPANY, Plaintiff,**

v.

**Brian Keith HOPKINS, Defendant.**

**Civ. A. No. J89–0350(W).**

United States District Court, S.D. Mississippi, Jackson Division.

Jan. 14, 1991.

---

Charles Davis, Irene Howard, Jackson, Miss., for plaintiff.

Elizabeth Gilchrist, Jackson, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

### I. CASE

This lawsuit was heard before the court sitting without a jury on October 25 and 26, 1990. The court has jurisdiction over this case on diversity grounds pursuant to 28 U.S.C. § 1332.[1] The parties in the suit are the plaintiff, Golden Rule Insurance Company (hereinafter referred to as "Golden Rule"), and the defendant, Brian Keith Hopkins (hereinafter sometimes referred to as "Hopkins"). Plaintiff is a company incorporated under the laws of and operating its principal place of business in the State of Illinois. Brian Hopkins was an adult citizen of the State of Mississippi. After the death of Hopkins, his mother (hereinafter referred to as "Ms. Hopkins"), acting as the administrix of his estate, was substituted as the proper party in this action. By its lawsuit, plaintiff Golden Rule asks this court to hold that on account of alleged material misrepresentations within the application form by Hopkins, Golden Rule may now rescind its health insurance policy between it and Hopkins, rendering the policy null and void. In response, alleging that Golden Rule has breached its contract, Hopkins countersued for full payment of medical expenses under said policy, plus $50,000 in punitive damages for Golden Rule's alleged bad faith efforts to terminate the policy. However, Hopkins' counterclaim for bad faith and his associated claim for punitive damages were subsequently dismissed via Golden Rule's summary disposition motion. Thus, only Hopkins' counterclaim for breach of contract remains before the court for resolution.

### II. STATEMENT OF FACTS

On September 29, 1989, Brian Hopkins died from complications arising from Acquired Immune Deficiency Syndrome (hereinafter referred to as "AIDS"). Previously, on June 27, 1987, Hopkins had submitted an application to Golden Rule for Individual Inflation Guard Major Medical Expense Policy and Decreasing Term Life Insurance Rider. Based on the contents of this application, which only revealed a medical history consisting of surgery to remove tonsils and hemorrhoids, Golden Rule issued policy No. 052324922 in Hopkins' name.

On October 24, 1988, the defendant was hospitalized at the Mississippi Baptist Medical Center (hereinafter referred to as "MBMC"). During his stay at the hospital, Hopkins was diagnosed as suffering from pneumocystic fever, diseases of the lungs, unspecified mycoses, cavitary lung disease with fungal infection, functional heart murmur, and AIDS. Medical expenses incurred in connection with the treatment and diagnosis of defendant's health condition were submitted to Golden Rule under its issued policy. This was the first of several times that Hopkins would be admitted to MBMC in order to receive treatment for his fatal condition. Hopkins was hospitalized at MBMC from December 29, 1988, through January 12, 1989, and again from February 7, 1989, through February 24, 1989. Between October 24, 1988, and January 30, 1989, Golden Rule paid a total of $6,553.34 in claims for medical expenses arising from defendant's hospitalizations during that same period.

On February 15, 1989, Golden Rule informed Hopkins that prior to the expiration of the policy's two-year contestability period, the insurance company would exercise its right to investigate his medical history to determine if a full and complete history had been reported on the application for insurance. As a result of said investiga-

---

**1.** Section 1332 of 28 U.S.C. provides in part:
　　(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—
　　　(1) citizens of different states; ...

tion, Golden Rule has refused to pay for any further medical expenses which were incurred by Hopkins until the court makes a decision concerning the validity of the issued policy.

## III. GOLDEN RULE CONTENTIONS

On June 20, 1989, Golden Rule filed a complaint for declaratory judgment against the defendant Hopkins. Golden Rule wants the Court to clarify the parties' rights and obligations under the health insurance policy which was issued to Hopkins, or alternatively, to rescind the disputed policy because the determinative application submitted by Hopkins contained material misrepresentations precluding further inquiry into pre-existing conditions. Defendant answered "no" to questions 15(a), (b), (c), and (f) on the application for health insurance which asked whether the applicant had had within the last ten years, any indication, diagnosis, or treatment of the following conditions: heart murmur, growth of any kind, skin disorder or disease, immune deficiencies, sexually transmitted disease, or any disorder of the glands. In response to application questions 19, 20, and 21, which requested information about any past surgery, defendant only reported a tonsillectomy performed by Dr. George E. Abraham in 1980 and a hemorrhoidectomy by Dr. John P. Culpepper in 1984.

Golden Rule contends that prior to submission of an application, Hopkins had suffered from the following health conditions: (1) a history of skin disorders; (2) a diagnosed heart condition (mitral valve prolapse and heart murmur); (3) a history of chronic lymphadenopathy; (4) past surgery for removal of rectal warts (sometimes referred to by the medical term–"condylomata acuminata"); and (5) a history of positive testing of the Human Immunodeficiency Virus (hereinafter referred to as "HIV"). Golden Rule says since these health conditions were not mentioned in the application for the insurance policy, such nondisclosures amounted to material misrepresentations when: (a) the knowledge that defendant had a prior heart condition and problem with his lymph nodes would have triggered other concerns of Golden Rule; (b) the knowledge of the surgery for the rectal warts would have prompted Golden Rule to attach an indefinite rider for sexually transmitted diseases; and (c) the knowledge that defendant had tested HIV positive or exhibited indications of an immune system deficiency would have caused Golden Rule to decline to insure Hopkins at the time he applied for such insurance. Golden Rule supports its position that Hopkins was HIV positive by citing to the recurrent episodes of skin disorders, of sore throats and swollen lymph glands, and of rectal warts (a sexually transmitted disease). Taken together, these symptoms indicated an immune system deficiency, says Golden Rule.

Golden Rule requested and received pursuant to defendant's authorization, copies of his medical reports from physicians who had treated him in the past. In 1983, Dr. Hilton H. Sessums and Dr. Barry M. Holcomb treated defendant for the skin disorders of urticaria and tinea cruris. That same year, as part of a preparation examination for the tonsillectomy, Dr. Holcomb discovered that Hopkins had a mitral valve prolapse, accompanied by a pulmonary outflow murmur. Dr. Holcomb wrote in his consultation note that this condition would require "follow-ups every 6 months or so." In 1984 and 1985, Hopkins received treatment at the Urgent Care Center in Hattiesburg, Mississippi, for sore throat and swollen lymph nodes. After this lawsuit was filed, Golden Rule received medical reports from Dr. Culpepper which revealed that in January 1986, in conjunction with the hemorrhoidectomy operation, defendant had undergone surgery to remove rectal warts. The medical records confirmed that Hopkins had received subsequent follow-up treatment for this same condition. Also contained in these records was a discharge summary by Dr. William A. Causey which stated that Hopkins had tested HIV positive three years prior to his October 24, 1988, hospital admission. This summary caused Golden Rule to request additional information concerning defendant's pre-application medical history.

On April 6, 1989, when Golden Rule contacted Hopkins to inquire about a special authorization needed to release MBMC's medical records, Hopkins denied a pre-application history of HIV positivity. He also refused to execute the special authorization form to release copies of his medical records held by MBMC. Hopkins then informed the company of his imminent lawsuit against it and referred the company's representative to his attorney. One day later, April 7, 1989, Hopkins revoked his March 8 and 9, 1988, general authorizations to release any further medical information to Golden Rule.

The insurance company spoke with Dr. Causey on April 24, 1989. Dr. Causey said that when he dictated the discharge summary he relied upon the notes of his fellow associate, Dr. Paul D. VanLandingham (a MBMC physician who admitted Hopkins and ordered diagnostic tests to identify Hopkins' illness), in reference to the patient's alleged history of HIV positivity. Golden Rule made several attempts to speak with Dr. VanLandingham. These attempts resulted in unsatisfactory responses concerning his admission notes about Hopkins' medical history. Shortly thereafter, Dr. Causey wrote to Golden Rule to say that the reference to the patient's history of HIV positivity was erroneous.

Golden Rule contends that fully disclosed medical reports show that Hopkins' incomplete or false answers to questions on the policy application should result in a cancellation of the policy. Golden Rule points to that portion of the text in the policy application which instructed the applicant to:

"... UNDERSTAND AND AGREE that: (1) the statements and answers given in this application, and in any supplements or amendments to it, will form the basis of, and be made a part of, any policy which may be issued; (2) any incorrect or incomplete information on this application may result in loss of coverage or claim denial."

In addition, Golden Rule directs attention to its policy provision, a bright yellow warning, that cautioned the applicant as follows:

"**Check the Attached Application:** Please read the copy of the application attached to your policy. If it is not complete or has an error, please let us know immediately. An incorrect application may cause your coverage under the policy to be voided or a claim to be reduced or denied."

Golden Rule was never told that any information contained in Hopkins' insurance application was incomplete in any way. The issued policy contained a maximum medical benefit limit of $1,000,000.00 and a decreasing term life insurance benefit of $25,000.00. Plaintiff's expert witness, Dr. Brobson Lutz, Golden Rule Underwriter Katherine McEwen, and Claims Division Manager Shirley Perry all testified that certain undisclosed health conditions, taken separately or in conjunction with others, were material risks which would have been considered if and before Golden Rule issued a policy to Hopkins.

## IV. HOPKINS' CASE

Ms. Hopkins protests that Brian Hopkins made no material misrepresentations to Golden Rule. Several defenses are asserted on Hopkins' behalf: first, that such innocent misrepresentations should not serve as the basis for rescission of the insurance policy; second, that Golden Rule has waived the prerogative to use evidence of the mitral valve prolapse and rectal warts as material misrepresentations; and third, that even if such matters were not waived, the insurance company is unable to provide sufficient evidence that meets the burden of showing by clear and convincing evidence that Hopkins was HIV positive before he submitted an application for a health policy. *Pedersen v. Chrysler Life Ins. Co.*, 677 F.Supp. 472, 474 (N.D.Miss. 1988) (under Mississippi law, Golden Rule must offer clear, convincing evidence that (1) misrepresentations were made by applicant, and (2) those misrepresentations were material to the risk that was undertaken by insurance company when a health policy was issued).

As stated previously, the defense asserts that Golden Rule is estopped from relying on alleged misrepresentations of a history

of mitral valve prolapse or rectal warts. However, medical records, which were obtained before defendant revoked the general authorizations, verify the presence of asymptomatic mitral valve disease and contain description and treatment of the rectal warts. In 1984, Dr. Holcomb examined Hopkins with regard to his heart murmur, reassured him about this condition, and advised him to stop smoking. Nothing more came of this visit except the decision to come in for a brief recheck next year. And in 1986, Dr. Culpepper surgically removed rectal warts as well as performing a hemorrhoidectomy.

Ms. Hopkins points out that Golden Rule's Claims Department had such information by April 30, 1989. Yet, says Hopkins, in its complaint, Golden Rule made no specific assertions that Hopkins had misrepresented his medical history of mitral valve prolapse and rectal warts. According to Hopkins, since Golden Rule possessed this information, but chose to make no specific reference to it in the complaint or to take any other action on the information, the company has waived forfeiture or rescission of the insurance policy. Defendant relies upon the following authorities: *Fishel v. American Secur. Life Ins. Co.*, 835 F.2d 613, 615 (5th Cir.1988) (applying Mississippi law, an insurer may be estopped by its knowledge or conduct from insisting on forfeiture of a policy) and *Employers Fire Insurance Co. v. Speed*, 242 Miss. 341, 133 So.2d 627, 629 (1961) (reciting the same principle); also note *Highlands Ins. Co. v. Allstate Ins. Co.*, 688 F.2d 398, 401 (5th Cir.1982) (applying Mississippi law, court ruled that clerical mistakes made due to business practices precluded Allstate from denying coverage under its renewal policy); *Casualty Reciprocal Exchange v. Wooley*, 217 So.2d 632, 636 (Miss.1969) ("an insurer may waive the right to forfeit or rescind a policy of insurance when the elements of estoppel are not present by recognizing the validity of the policy and continuing it in force after knowledge of circumstances entitling it to avoid the policy."). *See also Bankers Life & Casualty Co. v. Crenshaw*, 483 So.2d 254 (Miss.1985) (this case is cited to support the supposition that certain conduct will estop a company from asserting these alleged misrepresentations as a basis for rescission for the first time at trial).

From the defendant's viewpoint, this dispute was wrongfully prolonged after Golden Rule received a copy of a discharge summary dictated by Dr. Causey which contained the erroneous statement that: "He (Hopkins) had had a known HIV positive for three years prior to this admission." When the company representative spoke to Hopkins about a prior positive test, Hopkins denied having had such a test. Also, defendant points out that later on Drs. VanLandingham and Causey informed Golden Rule that the information in reference to a positive HIV test was incorrect. At trial Dr. Causey testified that he wrote to Golden Rule confirming that he had made a mistake about defendant's medical history. These statements, says Ms. Hopkins, should have ended the inquiry into Hopkins' past medical history. The defense maintains that for the insurance company to keep fishing for evidence of a pre-existing condition was indicative of a bad faith effort to breach a contract. On the other side, Golden Rule continued to question the credibility of Drs. VanLandingham and Causey's repudiation of the medical report which mentioned that Hopkins tested HIV positive three years prior to his admission at MBMC. And during the trial, Dr. Causey admitted that he was not eager to report matters to insurance companies which would be a detriment to the insured patient.

The defense further claims that there is no clear and convincing evidence that Hopkins was HIV positive at the time Hopkins applied for insurance coverage. The opinions of two internal medicine specialists, Dr. Lutz and Dr. Causey, says the defense, offer conflicting testimony. Defendant accuses Dr. Lutz of employing 20/20 hindsight to deduce that Hopkins was HIV positive in June 1987 as well as several years prior to that time based upon his view of the logical progress of the illness and the numerous indications of immune system deficiency before the date of the applica-

tion to Golden Rule. In opposition, Dr. Causey, a specialist of internal medicine and infectious disease, testified that the progression or development of AIDS in an individual is just too variable to make an accurate determination of when an individual became HIV infected. Dr. Abraham, who first diagnosed that Hopkins' illness was an AIDS related one, testified that the defendant appeared "chronically ill" when he was examined in his office. However, the impact of this observation was lessened when Dr. Abraham explained that by "chronically ill" he meant an illness of two to three months' duration. Defendant's counsel asserts that to find Hopkins made a misrepresentation about his HIV infection in June 1987 and knew or should have known of his condition would require defendant to be a better physician than his own doctors. Deposition testimony reveals that prior to Dr. Abraham, none of defendant's physicians believed that Hopkins was HIV infected at the time they treated him. Dr. Lutz testified that at the time of treatment rendered to defendant by Dr. Culpepper (January 1986), confirmatory tests for HIV infection were not available in most areas of the country. And, there was testimony from Hopkins' roommate and employer that prior to October, 1988, Hopkins appeared to be healthy and fit.

## V. THE APPLICABLE LAW

Both parties agree that the appropriate law to apply in this case is the law of the State of Mississippi. *See Bunge Corp. v. Biglane,* 418 F.Supp. 1159 (S.D.Miss.1976) (under the Mississippi conflict of law rule, the choice of law governing validity and construction of contract is controlled by the "most significant contacts" or "center of gravity" test). All significant contacts of this case have occurred in the State of Mississippi: the place where contract was initiated; the place where Hopkins resided and was hospitalized; the place where policy payments were sent; the place where medical records were located, etc.

■ " 'Under Mississippi law, a material misrepresentation made in applying for an insurance policy gives rise to a right in

the insurer to rescind the policy.' " *Mattox v. Western Fidelity Ins. Co.,* 694 F.Supp. 210, 214 (N.D.Miss.1988) (quoting from *Fidelity Mutual Life Ins. Co. v. Miazza,* 93 Miss. 18, 46 So. 817 (1908)). A misrepresentation is regarded as material if it affects either (1) the acceptance of the risk or (2) the hazard assumed by the company. *See Mattox, supra,* at 214. The insurer is entitled to rescind a policy, where falsity is shown, even if the insured believes that his application correctly reports his medical history because the law requires that an insured's statements be true in fact. *Pedersen v. Chrysler Life Ins. Co.,* 677 F.Supp. 472, 475 (N.D.Miss.1988) (the insured's good faith answers are irrelevant, an insurer is not required to show an intent to deceive in order to void a policy based on misrepresentations); *Dukes v. South Carolina Ins. Co.,* 590 F.Supp. 1166, 1168–70 (S.D.Miss.1984) (it is irrelevant that the insured does not know of the falsity of statements on his application). This is known as the "innocent misrepresentation" standard which operates to the benefit of the misinformed insurance company. *Dukes, supra,* at 1168–69 (innocent misrepresentations can void an issued policy if they are material to the risk assumed by the insurer) and list of cases cited therein. According to Mississippi insurance law, if a party applying for insurance makes a misstatement of a material fact in the application, the insurer is entitled to declare the policy issued in reliance thereon void *ab initio* where the misrepresentation and materiality are shown by clear and convincing evidence. *Pedersen, supra,* 677 F.Supp. at 474 and additional cases cited therein.

■ With reference to the waiver defense forwarded by the defendant, such a defense arises when an insurance company issues a policy and accepts premiums with full knowledge that the applicant is being treated for a pre-existing condition not disclosed on the application. *Mattox, supra,* 694 F.Supp. at 216; *see also Casualty Reciprocal Exchange v. Wooley,* 217 So.2d 632, 636 (Miss.1969) (if insurance company continued to recognize a policy after knowledge was acquired of circumstances enti-

tling it to avoid the policy, such conduct constituted a waiver to rescind). However, in the immediate case Golden Rule points out that it was obstructed from making a timely determination of Hopkins' *full* pre-application medical history and the nature of the diagnosed illness during his initial stays at MBMC. Golden Rule contends that its investigation was undertaken to determine the medical necessity of Hopkins' hospital confinement before it attempted to process his submitted December 29, 1988, through January 12, 1989, claims. The uncooperative actions of the defendant, says Golden Rule, delayed and stifled a free exchange of information, and thus, the plaintiff company was often inactive as a result of the employed stalling technique, rather than exhibiting conduct that would amount to an implied or express acquiescence concerning the dispute about defendant's issued policy. In *Chapman v. Safeco Ins. Co.*, 722 F.Supp. 285, 296 (N.D.Miss.1989), the court (applying Mississippi law) held that there is no mandate for an insurance company to be limited to relying solely upon the first reasons given for refusing to pay for a claim absent a showing that insurer has waived the subsequently raised defense(s) or circumstances require call for estoppel in asserting such a defense.

## VI. FINDINGS OF THE COURT

■ The Court finds that at the time of filling out the application the defendant misrepresented the following items about his health condition: (1) the history of skin disorders; (2) the diagnosis of mitral valve prolapse (and accompanying heart murmur) in 1983; (3) the recurring problem of swollen lymph glands during the 1984 and 1985 years; (4) the presence of rectal warts (condylomata acuminata) which required surgical removal in 1986, approximately seventeen months before submission of the application; and (5) an HIV positivity between one and three years prior to the issuance of the policy. Application question 15(a) asked if the applicant had within the last 10 years any indication, diagnosis, or treatment of "any disorder of the heart or circulatory system, including high blood pressure, anemia, heart attack, heart murmur, chest pain, irregular heartbeat,...." Hopkins responded "no" by checking a supplied box. His medical records indicate that in 1983 Dr. Holcomb told him he had a mitral valve prolapse and heart murmur.

Question 15(b) asked if the applicant had had within the last 10 years "any indication, diagnosis, or treatment of cancer, tumor, cyst, polyp or growth of any kind, or skin disorder or disease." Hopkins responded "no" by checking a box. But defendant's medical records indicated that in 1983 he received treatment by Drs. Sessums and Holcomb for back-to-back episodes of urticaria and tinea cruris; both conditions are disorders of the skin.

Question 15(c) asked if applicant had "any blood abnormalities, immune system deficiencies, or sexually transmitted diseases" within the last 10 years. Again, Hopkins responded "no". However, the medical reports of Dr. Culpepper reveal that, in conjunction with the reported hemorrhoidectomy, defendant had undergone surgery to remove rectal warts (condylomata acuminata) in 1986. Plaintiff's expert witness Dr. Lutz testified that condylomata acuminata found in the genital region were sexually transmitted. In addition, Dr. Culpepper testified that he had warned defendant that engaging in receptive rectal intercourse would cause a reoccurrence of the rectal warts, and that four months after the removal of the rectal warts, Hopkins received follow-up treatment which required the cauterization of new additional warts.

Question 15(f) asked whether applicant had within the last 10 years "any indication, diagnosis, or treatment of diabetes, sugar in the urine, or disorder of the thyroid, breast or other glands." Yet again, Hopkins responded by checking the "no" box. Records show, however, that Hopkins required treatment at the Urgent Care Center in Hattiesburg, Mississippi, during 1984 and 1985 for swelling of the lymph glands in his neck.

Defendant also gave inaccurate information regarding application question 19

which asked if applicant had "been hospital confined, had surgery, or discussed surgery with a doctor." In response to this question, Hopkins failed to disclose Dr. Culpepper's surgical removal of his rectal warts.

In the case at bar, Golden Rule has carried its burden of proving by clear and convincing evidence that Hopkins failed to disclose a history of urticaria and tinea cruris, mitral valve prolapse, persistent swelling of the lymph nodes, rectal warts, and HIV positivity and that such nondisclosures were material misrepresentations. All of these undisclosed conditions affected Golden Rule's risk of loss under the disputed policy. The court further finds that Hopkins' failure to disclose his history of (1) mitral valve prolapse and heart murmur, (2) chronic lymphadenopathy, (3) rectal warts, and (4) HIV positivity each constitutes an independent basis for rescission.[2]

■ Because there is no substantial proof that Hopkins knew he had been HIV positive at the time of filling out the application, the court finds that the defendant's nondisclosure of his HIV positivity to be an innocent misrepresentation. In Mississippi, an insurer has a right to rescind an insurance policy when the insured's application contains a false statement, and "such false statement materially affected either the acceptance of the risk or the hazard assumed by the insurer." *Miss. Code Ann.* § 83-9-11 (1972). Knowledge of the misrepresented condition or intent to deceive the insurer is required only where the misrepresentation is not material or where the basis for rescission is fraud. *Colonial Life and Accident Ins. Co. v. Cook,* 374 So.2d 1288, 1291 (Miss.1979); *National Casualty Co. v. Johnson,* 219 Miss. 1, 67 So.2d 865, 867 (1953); *Life & Casualty Ins. Co. of Tenn. v. Kelly,* 202 Miss. 319, 32 So.2d 120, 122 (1947).

At the time of the submission of this health insurance application, the defendant had already exhibited indications of immune system deficiency or HIV positivity such as skin disorders, chronic lymphadenopathy with recurrent sore throat, and condylomata acuminata. Dr. Brobson Lutz, Director of Health for the City of New Orleans, Louisiana, an expert in infectious diseases, opined that Hopkins, a practicing homosexual, was HIV positive before the year 1987. In fact, according to Dr. Lutz, Hopkins may have been HIV positive as early as 1982. Dr. Lutz reached these conclusions after he had made a thorough review of Hopkins' various medical ailments and frequency of such over the years, coupled with his (Dr. Lutz') expert understanding of the normal progression over time of the AIDS virus. This court is persuaded by Dr. Lutz' testimony and is convinced that Hopkins' demonstrated symptoms show HIV positivity before the year 1987. The demonstrated symptoms of HIV positivity makes the legal analysis in *State of Mississippi (Comp. Health Plan) v. Carper,* 545 So.2d 1 (Miss.1989), and its predecessor line of cases inappropriate. There, the Mississippi Supreme Court held that an insurance company could not exclude a pre-existing condition under an issued health policy because its symptoms were not manifest prior to the effective date of coverage.

■ Finally, relative to the defense of waiver, the burden of proving that an insurer has waived its right to rescind rests with the insured. 7 *Couch on Insurance 2d* § 35:269 (rev. ed. 1985). An insurer can "waive" its rights to rescind an insurance policy. However, in order for a waiver to arise certain conditions must be met. First, the insurer must have an existing right to rescind, and it must know of this right. Second, the insurer must express its intention to waive its right to rescind, or undertake such clear and unequivocal conduct as would warrant an inference that

**2.** In view of the testimony on the materiality of Hopkins' misrepresentation concerning the skin disorders, the court declines to find that this circumstance standing alone would supply an independent basis for rescission. However, the court has considered the proof on skin disorders on the question of whether Hopkins was HIV positive at the time he applied for insurance coverage.

the right is waived. 7 *Couch on Insurance 2d* § 35:249 (rev. ed. 1985). Silence does not necessarily constitute a waiver. *Id.* And, a reasonable delay between an insurer's investigation of pending claims and its reservation of contract rights does not constitute a waiver. *Unsatisfied Claim & Judgment Fund v. Bar Harbor Ins. Co.*, 422 F.2d 396, 396–97 (4th Cir. 1970); *Guilford Ind., Inc. v. Liberty Mut. Ins. Co.*, 688 F.Supp. 792, 796–97 (D.C.Me. 1988). The proposition that the waiver theory applies here due to Golden Rule's failure to allege matters in its complaint concerning defendant's heart condition and rectal warts is not persuasive. Firstly, plaintiff's complaint did alert Hopkins that his omission pertaining to the existence of the heart murmur was considered a material misrepresentation. Rule 8(a) of the Federal Rules of Civil Procedure requires only that a complaint provide a short and plain statement of the claim giving the defendant clear notice of the grounds upon which the claim rests; the plaintiff is not obligated to set forth all facts upon which the claim is based. *Frito–Lay, Inc. v. Wapco Constructors, Inc.*, 520 F.Supp. 186, 188 (M.D.La.1981); *Mann v. Adams Realty Co., Inc.*, 556 F.2d 288, 293 (5th Cir.1977); *accord Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Devel. Corp., S.A.*, 711 F.2d 989, 995 (11th Cir.1983). Secondly, said matters were fully explored in discovery, particularly the rectal warts which was briefed by both sides in their motions for summary judgment. Thirdly, the pretrial order in this case clearly anticipated the factual and legal issues arising from Hopkins' failure to disclose the surgical removal of his rectal warts. The pretrial order placed defendant on notice of the claims, and, thus gave defendant adequate time to prepare to address them at trial. Rule 16 of the Federal Rules of Civil Procedure provides for the use of pretrial conferences and pretrial orders to identify the issues of fact and law for resolution at trial. 6A Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1522, at 219–20 (2d ed. 1990). It is not necessary to amend previously filed pleadings when Rule 16 allows the pretrial order to supersede said pleadings. Finally, the court is convinced that Golden Rule's assertions that Hopkins had misrepresented his heart condition and history of rectal warts neither surprised his counsel at trial, or prejudiced his case since his counsel had access to all of the relevant medical files and knew that these defenses would be raised. *See Silver v. Nelson*, 610 F.Supp. 505, 520 (E.D.La.1985) and cases cited therein.

Similarly, the court fails to discern any conduct by Golden Rule following its investigation which would warrant an inference that it expressed an intent to waive any right to rescind its policy concerning the matters of defendant's heart condition and rectal warts. Golden Rule commenced an investigation into the matter, which for a time was hampered by defendant, then filed this lawsuit and continued a serious investigation into defendant's medical history.

In conclusion, for the reasons above discussed, the court finds that plaintiff is legally entitled to rescind the insurance policy and coverage thereafter. Thus, Golden Rule is released from the obligation to pay for any of the medical costs and expenses incurred by Hopkins' hospitalization and treatment. Defendant will receive back all premiums paid under the policy, plus interest. A separate judgment will be entered pursuant to the local rules.

SO ORDERED.