Ona Mae OGLESBEE, Plaintiff,

v.

**NATIONAL SECURITY FIRE AND CASUALTY COMPANY, Defendant.**

Civ. A. No. H90–0046(W).

United States District Court, S.D. Mississippi, Hattiesburg Division.

Jan. 29, 1992.

Jimmy Brown, Starkville, Miss., for plaintiff.

David Ott, Hattiesburg, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before this court is the motion of defendant National Security Fire and Casualty Company for summary judgment pursuant to Rule 56(c), Federal Rules of Civil Procedure.[1] The interrogatory here is whether

---

1. Rule 56(c), Federal Rules of Civil Procedure, in pertinent part provides:

    ... The judgment sought shall be rendered forthwith if the pleadings, depositions, an-

swers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any mate-

National Security Fire and Casualty Company (hereinafter "National") may rescind its policy with its insured, the plaintiff, on the grounds: (1) that plaintiff misrepresented a material matter on the insurance application; and (2) that plaintiff accepted and negotiated National's check for refund of premiums, said check having been sent to plaintiff upon cancellation of the policy for misrepresentation, which says National, constitutes waiver and/or estoppel. Having studied the briefs of the parties and having heard oral arguments of counsel, the court is persuaded by the applicable law and undisputed facts to grant the defendant's motion for summary judgment.

The parties to this lawsuit are the plaintiff, Ona Mae Oglesbee, a Mississippi resident, and National Security Fire and Casualty Company. National is a foreign insurance company located in Elba, Alabama, certified as a non-admitted insurer, but authorized to do business in this state.

Originally filed on January 30, 1990, this case was removed to this court on February 27, 1990, pursuant to 28 U.S.C. § 1441[2] and 28 U.S.C. § 1332.[3] When removed, this lawsuit featured a co-defendant, Anderson Insurance Company, that, as a Mississippi resident, was a non-diverse defendant; however, on April 11, 1990, this court approved an agreement between the plaintiff and defendant Anderson Insurance Company to dismiss the claim against Anderson with prejudice.

The factual portrait of this lawsuit is easy to sketch. On or about November 29, 1986, the plaintiff, Ona Mae Oglesbee, applied to National for insurance coverage on her building and land. Based upon the application and the information contained therein, National issued the policy of insurance for plaintiff's building and land, which included a liability provision of $25,000.00. The policy identified only Ona Mae Oglesbee as the insured.

The application for the insurance policy, which is the centerpiece of this lawsuit, asked plaintiff whether she had full unconditional ownership of the building and land to be insured and whether plaintiff owned title in fee simple to any land upon which the insured building was located. The quoted sections from the application are as follows:

1. If a building is to be insured, does applicant, subject to mortgage stated above, have full unconditional ownership to the building and to the land upon which it is located?

2. Application is hereby made for Fire and Extended Coverage insurance on the above property. I certify that there is no other insurance and that I own title in fee simple to any land upon which an insured building is located. I understand that other insurance is prohibited, and that no electrical burnout is offered on appliances unless a premium is indicated above.

Plaintiff answered yes to the first question and indicated an affirmative response to the second statement by signing the application which signified that she owned the insured property in fee simple.

On or about April 4, 1989, F. Lynwood Oglesbee suffered a tragic and fatal fall at the plaintiff's residence. The plaintiff is F. Lynwood's mother. No one quarrels with the assertion that this circumstance could

---

rial fact and that the moving party is entitled to a judgment as a matter of law.

**2.** Title 28 U.S.C. § 1441 provides in part:
(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

**3.** Title 28 U.S.C. § 1332 provides in part:
(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—
(1) citizens of different States;
(2) citizens of a State, and citizens or subjects of a foreign state;
(3) citizens of different States and in which citizens or subjects of a foreign state are additional parties.

trigger the liability provision of plaintiff's policy with National.

After being notified of the possible claim against its policy, National wrote and advised the plaintiff that National was cancelling the policy. National enclosed a refund of premiums check to plaintiff in the sum of $1,601.00. Plaintiff cashed the check. In its letter of cancellation, National claimed that plaintiff had misrepresented her ownership of the property in question. National said that according to its information plaintiff owned but a life estate in the property, and not in fee simple as she had represented on her policy application. National charged that on June 20, 1978, by warranty deed, plaintiff had deeded the insured property to Elti Mae Blue and F. Lynwood Oglesbee, reserving to herself only a life estate. National's letter to plaintiff concluded that on account of this discrepancy, National was cancelling the policy. As earlier mentioned, National also tendered to plaintiff a refund of previously paid premiums.

Aggrieved over National's actions, plaintiff resorted to court. Originally filed in state court, plaintiff's lawsuit later was removed to this federal forum. Seeking compensatory damages in the amount of $25,000, plaintiff claims that she is entitled to a money judgment from the defendant insurer for extreme mental anguish suffered by her as a result of National's wrongful cancellation of the policy which has stripped her of coverage while she is exposed to a possible liability lawsuit from the heirs of her son. Plaintiff also seeks punitive damages in the sum of $5,000,-000.00, claiming that defendant's act of cancelling the policy was in bad faith since defendant had no arguable reason for so doing.

While the bedrock of plaintiff's claim for compensatory damages is that she has suffered extreme mental anguish apprehending a lawsuit by her son's heirs while she is bereft of coverage, the facts show that to date no lawsuit premised on the death of her son's unfortunate death has been filed against her. Nor, to date, has any claim been made against the insurance company by any of the heirs of F. Lynwood Oglesbee.[4]

National's response to plaintiff's lawsuit is the instant motion for summary judgment. The motion was filed initially in April, 1990, but pursuant to Rule 56(f),[5] Federal Rules of Civil Procedure, the court held the motion in abeyance in order to allow plaintiff adequate time to complete discovery.

In its motion for summary judgment, National argues that it is entitled to this relief on either of two principal grounds: (1) that plaintiff misrepresented a material matter on the insurance application; and (2) that plaintiff accepted and negotiated National's check for refund of premiums, said check having been sent to plaintiff upon cancellation of the policy for misrepresentation, which says National, constitutes waiver and/or estoppel. Each argument will be considered separately.

▮▮▮ Before proceeding to the respective arguments, the court first needs to set out the ground rules for its analysis. These ground rules are found in Rule 56(c) and its interpretative cases. Rule 56(c) provides as follows:

... The [summary] judgment [motion] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

---

**4.** Surviving F. Lynwood Oglesbee were his wife, daughter, sister and mother. Under Miss.Code Ann. § 11–7–13 (Supp.1991), a wrongful death action may be brought in the name of the personal representative of the deceased person for the benefit of all persons entitled under law to recover.

**5.** Rule 56(f) provides as follows:

Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

entitled to judgment as a matter of law. . . .

Case law has fleshed out this skeletal rubric and provided to us the following illustrative guideposts. When adequate time for discovery has been had and the motion for summary judgment is made against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case on which that party would bear the burden of proof at trial, summary judgment should be granted to the moving party. Complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Rule 56(c) requires the district court to enter summary judgment if the evidence favoring the non-moving party is not sufficient for the jury to enter a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). When the moving party has carried his burden under Rule 56(c), his opponent must present more than a metaphysical doubt about the material facts. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Now, having identified the juridical yardstick, the court takes measure of the arguments.

### Material Misrepresentation

■ To prevail on this claim at trial, National would have to establish by clear and convincing evidence that there was a factual misstatement, and it was material to the issuance of the policy. *See Brewster v. Bubba Oustalet, Inc.*, 231 So.2d 189 (Miss.1970) (evidence must be clear and convincing). To prevail on this motion for summary judgment in advance of trial, National need show that under the undisputed facts it is entitled to a verdict and that no submissions from plaintiff establish a jury issue on the matter. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). As stated earlier, this court is satisfied that defendant insurer is entitled to a grant of summary judgment on this claim.

There is no dispute that plaintiff signed the application. There is no dispute that the application asked whether plaintiff owned the insured property in fee simple. Neither is there any dispute that plaintiff answered in the affirmative, when in truth she only possessed a life estate. So, clearly, there is a misrepresentation here.

■ In her affidavit, plaintiff claims that she but signed the application, without a careful reading of same, at the behest of National's agent, who filled out the application for her from information contained on prior policies of insurance begotten by that agent.

This defense is too weak to withstand the thrust of *Pedersen v. Chrylser Life Insurance Co.*, 677 F.Supp. 472 (N.D.Miss.1988). Applying Mississippi law, as we are here commanded to do by *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938),[6] the *Pedersen* Court offered the following cogent observations:

> . . . [A] person cannot avoid a written contract which he has entered into merely because he failed to read it or have it read to him. Under Mississippi law, unless a party was induced not to read the contract or have it read to him by fraudulent representations made by another party, he will be required to abide by its terms.

*Pedersen*, 677 F.Supp. at 475 (citations omitted).

Since plaintiff admits that she signed the application and does not allege that she signed the application as a result of any duress, coercion or fraud by defendant,[7] the rubric pronounced in *Pedersen* defeats plaintiff's defense.

---

**6.** *Erie* requires federal courts exercising jurisdiction in diversity of citizenship cases to apply the applicable substantive law from the forum in which the federal court sits.

**7.** Plaintiff's complaint is void of any obligations of fraud or coercion. Moreover, by agreed order, the parties have dismissed the soliciting agent from this lawsuit.

The next cohesive necessary to convert these remnants to a summary judgment tapestry is proof by National that the misrepresentation was material. *Gardner v. Wilkinson*, 643 F.2d 1135, 1136 n. 3 (5th Cir.1981) (applying Mississippi law). National says that even though it does not have to prove materiality here, it has done so. National first points to those cases which hold that in the case of materiality, a misrepresentation in the context of an insurance contract does not go to the jury in every instance. *Dukes v. South Carolina Insurance Co.*, 590 F.Supp. 1166, 1168–69 (S.D.Miss.1984), *aff'd*, 770 F.2d 545 (5th Cir.1985); *Sanford v. Federated Guaranty Insurance Co.*, 522 So.2d 214, 217 (Miss. 1988); *Fidelity Mutual Life Insurance Co. v. Miazza*, 93 Miss. 422, 438, 48 So. 1017, 1019 (1909).

National has submitted the affidavit of Claims Manager Jack G. Bonner that the omission was material. Bonner, also a member of the underwriting committee, unequivocally states that National would not have issued the policy to Oglesbee had it known that she owned only a life estate in the property for which insurance coverage was sought. According to Bonner, the underwriting guidelines for National Security require that the owner in fee simple of the property to be insured actually apply for the insurance.

Plaintiff has offered no appropriate submission whatsoever to refute Bonner's testimony that the defendant insurer views this circumstance as material to the risk. Plaintiff submits only her affidavit that the defendant has no basis in distinguishing fee simple ownership from a life estate. Plaintiff is not tendered as an expert, nor one with knowledge of how risks are assessed by insurers. Plaintiff's affidavit, then, provides no appropriate contrary assertion. Hence, the court is persuaded to grant summary judgment to defendant on this point.

■■ The next question is whether by her conduct after allegedly receiving a notice of cancellation and return of premiums from defendant plaintiff now has waived her claim against defendant and/or is es-

topped from pursuing same. After a review of the salient facts, the court is convinced that plaintiff has waived her claim.

The definitional distinction between waiver and estoppel is ably set out in *Pitts By and Through Pitts v. American Security Life Insurance Co.*, 931 F.2d 351 (5th Cir. 1991). In *Pitts*, the Court made the following observation:

Although waiver and estoppel are sometimes used interchangeably, especially in the law of insurance, there is a subtle but significant legal distinction between the two. *See Intel Corp. v. Hartford Accident & Indem. Co.*, 692 F.Supp. 1171, 1179 (N.D.Cal.1988). Strictly defined, waiver describes the act, or the consequences of the act, of one party only, while estoppel exists when the conduct of one party has induced the other party to take a position that would result in harm if the first party's act were repudiated. *Id.* at 1179 n. 8. In contrast to waiver, then, estoppel involves some element of reliance or prejudice on the part of the insured before an insurer is foreclosed from raising a ground for denial of liability that was known at an earlier date. *See* Restatement (Second) of Torts § 894(1) (1977).

*Pitts*, 931 F.2d at 357.

The Court then went on to define waiver as the voluntary or intentional relinquishment of a known right. *Id.* at p. 357.

The defendant insurance company argues here that it is entitled to a grant of summary judgment because after she was aware that the policy had been cancelled, plaintiff accepted and negotiated National's check for refund of premiums. The deposition of plaintiff Ona Mae Oglesbee, taken June 28, 1990, provides the factual background for defendant's contention. In her deposition, plaintiff testified as follows:

Q. Now, you received a return premium check, did you not?

A. Yes.

Q. And you took that check?

A. And how many months was it? How long was it I kept it before I—

Q. Well, I don't know. What did you do with it?

A. I cashed it, but it was a long time after.

Q. Why did you wait?

A. I just didn't have no life to do nothing.

Q. All right. Did you just cash it in for cash or did you put it in a checking account or—

A. I put it—I don't know what I done with it. I imagine I paid on my bills with it.

(Plaintiff's Deposition, page 91, lines 11–24).

     \*    \*    \*    \*    \*    \*

Q. Is that your signature on the back of that check?

A. Yes, that's mine. And after I—when I first—I kept it for a long time and then it seems like I talked to a lawyer here or something. I don't remember.

Q. What lawyer did you talk to?

A. I don't remember. I've tried to rack my brains out thinking who it was.

Q. So before you cashed the check you talked to an attorney?

A. To somebody.

Q. Here in Marion County?

A. No. I don't remember who it was. If it was somebody in Marion County I could call and find out, but I . . .

Q. And after you sat on it a while and after you talked to the attorney you made a decision to go ahead and cash the check?

A. I don't know how come me to cash it. I reckon I got in a finance condition and had to cash it.

(Plaintiff's Deposition, page 92, lines 8–25).

     \*    \*    \*    \*    \*    \*

Q. Now, getting back to my question. I realize you don't remember or can't recall the attorney you talked to, but you received this check and you were still having difficulty regarding your son's death.

A. You can say that again.

Q. And you consulted an attorney but you don't recall who it was?

A. I don't remember.

Q. All right. And then after that it appears on the back of this check that it looks like it was run through the bank account probably in August 1989. That's when you would have cashed the check?

A. Here.

Q. The Citizens Bank, Columbia, Mississippi.

A. Right.

Q. And that was after consultation with an attorney whose name you can't remember.

A. I just can't. I tried to bring that back last night. I had forgotten how much it was.

Q. It was $1,601?

A. Yeah, $1,601.

Q. Now, my question is was it after the consultation with the attorneys when you went to the bank and cashed this check?

A. Yes. It was almost a year I couldn't even drive my car.

Q. Who took you to cash this check?

A. Didn't nobody take me. I sent it, I guess. I don't remember much, I tell you.

Q. And you knew that this check represented a return of the premiums that you had paid?

A. Yes. And instead of—whenever he was called and told what happened later on that check come in the mail, my premiums that I had paid.

(Plaintiff's Deposition, p. 93, lines 17–25 to p. 94, lines 1–25).

In *Michigan Millers Mutual Insurance Co. v. Lindsey*, 285 So.2d 908, 911 (Miss. 1973), the Court stated that proof of waiver must be clear and convincing, which necessitates a weighing of the evidence. In the case *sub judice*, the evidence is clear and convincing that plaintiff waived her claim. She received a refund of premiums, went to a lawyer and discussed the matter, then cashed the check. Hence, the facts and

**916**

circumstances of the instant case compel the conclusion that plaintiff here had the requisite knowledge and intention for waiver. The court finds that estoppel does not apply here since there is a want of proof on whether plaintiff's conduct induced the insurance company to take a position which exposed it to harm.

In sum, the court holds that the defendant, National Security Fire and Casualty Company, is entitled to a grant of summary judgment against the plaintiff because (1) plaintiff misrepresented a material matter on the insurance application, and (2) by her conduct after being made aware that the policy was being cancelled, she waived her rights to assert a claim under the policy. A separate judgment shall be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

SO ORDERED AND ADJUDGED.